# EXHIBIT 1

FILED
18 MAY 01 AM 9:12

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 18-2-11073-4 SEA

**SUPERIOR COURT OF WASHINGTON IN AND FOR KING COUNTY**

| | |
|---|---|
| CHONG and MARILYN YIM, KELLY LYLES, EILEEN, LLC, and RENTAL HOUSING ASSOCIATION OF WASHINGTON,<br><br>    Plaintiffs,<br><br>v.<br><br>THE CITY OF SEATTLE, a Washington Municipal corporation,<br><br>    Defendant. | Case No. _____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

PLAINTIFFS, BY AND THROUGH THEIR ATTORNEYS, make this Complaint against the City of Seattle, seeking a declaration that the City's "Fair Chance Housing Ordinance," enacted as Council Bill 119015, violates the Due Process and Free Speech provisions of the Washington State Constitution and the United States Constitution, and also seeking a permanent injunction forbidding the City from enforcing its unconstitutional ordinance.

///

COMPLAINT - 1 of 18

PACIFIC LEGAL FOUNDATION
10940 NE 33rd Place, Suite 210
Bellevue, Washington 98004
(425) 576-0484

## I. INTRODUCTION

1. Landowners have a constitutionally protected right to rent their property to whom they choose, at a price they choose, subject to reasonable anti-discrimination measures. *See Manufactured Housing Communities of Washington v. State*, 142 Wn.2d 347, 363-65, 13 P.3d 183 (2000); *Yim v. City of Seattle (Yim I)*, Case No. 17-2-05595-6 SEA (King Cty. Sup. Ct. Mar. 28, 2018).

2. In exercising this property right, residential landlords commonly screen an applicant's criminal history and check the sex offender registry because landlords must protect their tenants against foreseeable criminal acts of third parties. *Griffin v. W. RS, Inc.*, 97 Wn. App. 557, 570, 984 P.2d 1070 (1999), *rev'd on other grounds by* 143 Wn.2d 81, 13 P.3d 558 (2001); *see also Hutchins v. 1001 Fourth Avenue Associates,* 116 Wn.2d 217, 224, 802 P.2d 1360 (1991). Landlords can even become criminally liable for certain offenses committed by their tenants. *See State v. Sigman*, 118 Wn.2d 442, 447, 826 P.2d 144 (1992). Thus, the Washington State Supreme Court posited that if a landlord may be held liable for the foreseeable criminal acts of third parties, "[i]t would seem only reasonable that the landlord should at the same time enjoy the right to exclude persons who may foreseeably cause such injury." *City of Bremerton v. Widell*, 146 Wn.2d 561, 572, 51 P.3d 733 (2002). A tragic example of this issue recently arose in Illinois in which a tenant raped and murdered a neighboring tenant. The victim's family has sued the landlord for failing to perform a criminal background check.[1]

---

[1] Cate Cuaguiran, *Family of woman murdered in Schaumburg apartment files lawsuit*, Eyewitness News (Aug. 2, 2017) (*available at* http://abc7chicago.com/family-of-woman-murdered-in-schaumburg-apartment-files-lawsuit/2267952/).

3. The City's new Fair Chance Housing Ordinance prohibits landlords from inquiring after applicants' criminal backgrounds. The City enacted the Ordinance in order to provide more housing opportunities for individuals with a criminal record and to guard against the possibility that rental decisions based on an applicant's criminal record may have a disparate impact on those groups that are disproportionately affected by the criminal justice system.

4. The Ordinance declares it an "unfair practice" for a private residential landlord to consider—or even request—an applicant's criminal history when making a rental decision. It thereby deprives residential landlords of their right and obligation to protect themselves and their tenants from potentially dangerous criminals.

5. The Fair Chance Housing Ordinance also applies to and impacts organizations that provide professional screening services. The Ordinance's prohibition on inquiring after the criminal history of housing applicants applies to any "person," defined by the Ordinance as "one or more individuals, partnerships, organizations, trade or professional associations, corporations, legal representatives, trustees, trustees in bankruptcy, or receivers. It includes any owner, lessee, proprietor, manager, agent, or employee, whether one or more natural persons, and any political or civil subdivision or agency or instrumentality of the City." SMC 14.09.010. Because of the Fair Chance Housing Ordinance, landlords can no longer request screening services, and the screening companies in turn cannot inquire after criminal history of housing applicants or submit such information to landlords.

6. The Ordinance violates the Due Process and Free Speech guarantees of the Washington State Constitution and the United States Constitution.

## II.   PARTIES

7. Chong and MariLyn Yim, Kelly Lyles, and Eileen, LLC, are plaintiff landlords who own and manage small rental properties in Seattle and are subject to Seattle's Open Housing Ordinance.

8. The Rental Housing Association, a plaintiff in this action, is a membership association that provides screening services for its landlord members.

9. The City of Seattle is a Washington state municipality located in King County and chartered by the State of Washington.

## III.   JURISDICTION AND VENUE

10. This civil action is a case of actual controversy between Plaintiffs and Defendant arising under the Washington State and Federal Constitutions.

11. This Court has jurisdiction over this matter pursuant to RCW 4.28.020, RCW 7.24.010, 7.40.010, and Article IV, Sections 1 and 6, of the Washington State Constitution.

12. Under RCW 4.12.020, venue is proper in King County Superior Court because the City of Seattle sits within county limits.

## IV.   FACTUAL BACKGROUND

### Seattle's Fair Chance Housing Ordinance

13. On August 14, 2017, the City Council voted to adopt the Fair Chance Housing Ordinance (Council Bill 119015), adding Chapter 14.09 to Seattle's Municipal Code to regulate private landlords' use of criminal history checks when reviewing rental applications. Former Mayor Ed Murray signed the bill into law on August 23, 2017. The law went into effect on February 19, 2018.

14. The City enacted the Fair Chance Housing Ordinance in response to reports indicating that (1) an estimated one in three adults has either an arrest or a criminal record; (2) certain minority groups are more likely to have criminal records; and (3) that upon release from incarceration, individuals with stable housing are more likely to reintegrate into society and are less likely to reoffend. Council Bill 119015 (Recitals).

15. The reports that the City cited as support for the Ordinance recommended helping former convicts by expanding public housing assistance and support services such as drug treatment and counseling. The City, however, did not adopt these recommendations. Nor did the City change any of the policies barring individuals with certain criminal histories from supportive public housing. Instead, the City sought only to regulate private rental housing.

16. The Ordinance declares it an "unfair practice" to inquire about a prospective tenant's arrest records, conviction records, or other criminal history, or to take an adverse action against a prospective tenant based on criminal history. SMC 14.09.025(A)(2).

17. The Ordinance also declares it an "unlawful practice" for residential landlords to take any adverse actions based on an applicant's status on a county, state, or national sex offender registry, if the crime was committed when the applicant was a juvenile. SMC 14.09.025(A)(5).

18. If the prospective tenant's status on a sex offender registry resulted from a crime committed as an adult, then a landlord can only take adverse action based on a prospective tenant's registry status if the landlord can prove to the satisfaction of the Seattle Office for Civil Rights that the decision to screen applicants was based on a "legitimate business reason." SMC 14.09.025(A)(3).

19. The Ordinance states that a "legitimate business reason" will exist only if the landlord can demonstrate that

the policy or practice is necessary to achieve a substantial, legitimate, nondiscriminatory interest. To determine such an interest, a landlord must demonstrate, through reliable evidence, a nexus between the policy or practice and resident safety and/or protecting property, in light of the following factors:

A. The nature and severity of the conviction;

B. The number and types of convictions;

C. The time that has elapsed since the date of conviction;

D. The age of the individual at the time of conviction;

E. Evidence of good tenant history before and/or after the conviction occurred; and

F. Any supplemental information related to the individual's rehabilitation, good conduct, and facts or circumstances surrounding the conviction provided by the individual, if the individual chooses to do so.

SMC 14.09.010.

20. Landlords must provide written notice of these requirements on all rental applications.

21. If a residential landlord takes any adverse action based on a "legitimate business reason," he or she must provide the applicant with written notice of the action and state the specific records that were the basis for the landlord's decision. SMC 14.09.025(B).

22. The Ordinance does not allow a residential landlord to base a rental decision upon personal safety, safety of other tenants, or revulsion due to convictions for sex offenses, crimes against children, or even hate crimes.

23. Although the City claims that preventing landlords from considering an applicant's rental history is necessary to assist individuals reentering society after incarceration, the Ordinance exempts landlords providing "federally assisted housing subject to federal regulations that require denial of tenancy, including but not limited to when any member of the household is subject to a lifetime sex offender registration requirement under a state sex offender registration program and/or convicted of manufacture of production of methamphetamine on the premises of federally assisted housing." SMC 14.09.115(B).

24. A private landlord's failure to comply with the restrictions placed on criminal history screening is deemed a violation of the law and is enforceable by the Seattle Office for Civil Rights, which also acts as a quasi-judicial agency charged with adjudicating any claimed violations of the "Fair Chance Housing Ordinance." SMC 14.09.035, .040, .060, .070. An aggrieved applicant may also file charges with the Seattle Office for Civil Rights within one year after the adverse action. SMC 14.09.050, .055.

25. A final decision of the Seattle Office for Civil Rights denying an aggrieved applicant's charge is appealable to the Seattle Human Rights Commission, which has the authority to either affirm the decision or direct the Seattle Office for Civil Rights to investigate the matter further. SMC 14.09.075.

26. In the event the Seattle Office for Civil Rights determines that reasonable cause exists to believe that a violation occurred, the Director is authorized to facilitate a conciliation agreement that may include an offer of tenancy, reimbursement of application fees, payment of actual damages, attorneys' fees, and payment of civil penalties. SMC 14.09.080.

27. If the Director's efforts at reaching a conciliation agreement are unsuccessful, the Director will forward the investigatory file to the City Attorney, who will then file a complaint with the City Hearing Examiner on behalf of the Seattle Office for Civil Rights. SMC 14.09.085. At its discretion, the Seattle Human Rights Commission may appoint two Commissioners to hear the case on a panel. SMC 14.09.085.

28. The Hearing Examiner is authorized to order the landlord to take such affirmative action or provide for such relief as is deemed necessary to correct the violation, including damages, attorneys' fees, and equitable relief. SMC 14.09.090. The Hearing Examiner may also impose civil penalties ranging from $11,000 for the first violation to as high as $55,000 for repeat violations. SMC 14.09.100.

29. In enacting the Fair Chance Housing Ordinance, City Councilmembers recognized that Washington's Residential Landlord-Tenant Act, Ch. 59.18 RCW, allows landlords to screen potential tenants based on a variety of information, including an applicant's status on the sex offender registry and criminal history going back seven years, subject to a requirement that the applicant be notified of the check and provided an opportunity to respond to the information. RCW 59.18.257; RCW 59.18.030.

**Plaintiffs Will Be Irreparably Harmed If the Ordinance Goes Into Effect**

30. Each of the plaintiffs will be irreparably injured if the Fair Chance Housing Ordinance goes into effect because the City has burdened their constitutionally protected right to choose whom they will house and work with in these often lengthy and interpersonal landlord-tenant relationships. The inability to access valuable information about potential tenants increases various risks faced by plaintiffs when renting their property.

31. Chong and MariLyn Yim own a duplex and a triplex in Seattle. They and their three children live in one of the triplex units. They rent out the other two units. The Yim family could not afford to live in Seattle without the rental income from these properties. The Yims consider prospective tenants on a case-by-case basis, and have rented units to individuals with a criminal history based on the number of convictions, the seriousness of the crimes, and other factors relating to personal and financial risks and the safety of their children and other tenants.

32. The Yims value their right to select their tenants. The Yim family cannot afford to absorb losses because of a tenancy gone bad. And for a family with three children, selecting a tenant who will also be their close neighbor requires careful discretion. The Yims share a yard with their renters, and the Yim children are occasionally at home alone when their renters are home. The Yims treasure their right to ensure compatibility and safety for themselves and their tenants.

33. The Fair Chance Housing Ordinance has an immediate impact on the Yim family and their current tenants. The Yims have long rented their units well below market rate. Because of the Fair Chance Housing Ordinance, they will have to raise rents in order to build up a larger cushion of reserves to absorb the risks they face under the new law.

34. Kelly Lyles is a single woman who owns and rents a home in West Seattle. Ms. Lyles considers prospective tenants on a case-by-case basis. For example, Ms. Lyles understands the needs of individuals who are recovering from addiction and would consider an applicant who did not otherwise satisfy her credit screening requirements if the applicant was part of a recovery program.

35. Ms. Lyles is a local artist who relies on rental income to afford living and working in Seattle. The $1,300 in rent she receives monthly makes up most of her income.

PACIFIC LEGAL FOUNDATION
10940 NE 33rd Place, Suite 210
Bellevue, Washington 98004
(425) 576-0484

36. Discretion in selecting tenants is vital to Ms. Lyles's livelihood. She cannot afford to miss even a month's rent, and she does not have the resources to pursue an unlawful detainer action. As a single woman who interacts frequently with her tenants, she also considers personal safety when choosing them. Such considerations cannot be adequately addressed under the restrictions imposed by the Fair Chance Housing Ordinance. The Ordinance will impact Ms. Lyles's decisions about her rental criteria because she wants to avoid filling a vacancy with someone that she has not fully vetted.

37. Scott Davis and his wife own and manage Eileen, LLC, through which they operate a seven-unit residential complex in the Greenlake area of Seattle. Mr. Davis also owns and runs a small business, the Davis Sign Company. As a small family venture, the Davises treasure their ability to decide who they will rent their units to. The rental property serves as an important supplement to the Davis family's income. They review all rental applications on a case-by-case basis and would consider applicants with a criminal history based on the circumstances of the crime(s) and other factors relating to personal and financial risks and the safety of their other tenants.

38. Rental Housing Association of Washington (RHA) is a statewide nonprofit organization established in 1935. RHA provides education and assistance to comply with rental housing laws and regularly advocates for uniformity and fairness in state and local policymaking. Most of RHA's over 5,300 members rent out single-family homes, often on a temporary basis for work, personal, or financial reasons. Most of RHA's members own and rent residential properties in Seattle.

39. RHA provides professional screening services to its members. Indeed, RHA's screening service is a primary reason that landlords join RHA. RHA members may request a limited or comprehensive screening of housing applicants. A comprehensive screening includes credit history, eviction history, past residences, and criminal conviction and arrest records within the last seven years. RHA contracts with a third-party vendor, Judicial Information Services, to obtain this criminal background information. If a criminal history shows up on a screening report from Judicial Information Services, RHA staff verifies that the housing applicant is the same individual on the screening report.

40. Before offering criminal-background-check services to members, RHA requires landlords to go through a certification process in order to comply with the Federal Fair Credit Reporting Act.

41. The criminal history component of RHA's full screening report provides a short description of any offenses, the disposition of each offense, any fines or confinement periods, the relevant jurisdiction, and the relevant dates. The report may also provide additional information such as probation length and conditions, credit for time served, and probation violations.

42. As a direct consequence of the Fair Chance Housing Ordinance, RHA cannot provide a long-standing service to its members. Since the Fair Chance Housing Ordinance came into effect, RHA has seen an increase in requests to run credit checks in lieu of criminal background screening. RHA has also seen members switch to reliance on national screening companies instead of RHA to provide screening services.

///

**V.     DECLARATORY RELIEF ALLEGATIONS (Ch. 7.24 RCW)**

43.   Landowners have a well-recognized and constitutionally protected right to rent their property to whom they choose, at a price they choose. *See Manufactured Housing Communities of Washington*, 142 Wn.2d at 363-65; *Yim I*, Case No. 17-2-05595-6 SEA.

44.   Under Article I, Section 3, of the Washington State Constitution and the Fourteenth Amendment to the U.S. Constitution, the City cannot deprive landlords of property without due process of law. By enacting an unduly oppressive rule that is not reasonably necessary to fulfilling a legitimate public purpose, the City has facially violated the plaintiffs' due process rights.

45.   Under Article I, Section 5, of the Washington State Constitution, and the First Amendment to the U.S. Constitution, the City cannot deprive RHA or landlords of the right to access and share truthful information regarding housing applicants without satisfying heightened scrutiny.

46.   A declaratory relief judgment as to whether the City may enforce the Fair Chance Housing Ordinance to restrict landlords from screening rental applicants' criminal histories will serve a useful purpose in clarifying and settling the legal relations between plaintiffs and the City. A declaratory relief judgment will also afford relief from the uncertainty and insecurity giving rise to this controversy.

**VI.     PERMANENT INJUNCTIVE RELIEF ALLEGATIONS (Ch. 7.40 RCW)**

47.   The Yims and the other landlord-plaintiffs have no adequate remedy at law to address the City's unlawful deprivation of their right to lease their property to the eligible candidate of their choosing, nor do landlords or RHA have an adequate remedy at law regarding the speech restriction imposed by the Fair Chance Housing Ordinance.

48. The Yims and RHA will suffer irreparable injury absent an injunction restraining the City from enforcing this unconstitutional ordinance.

## VII.   CAUSES OF ACTION

### COUNT I

**The Fair Chance Housing Ordinance violates the Free Speech guarantees of the state and federal Constitutions because it bars access to truthful information based on speech content, speaker identity and the speaker's purpose**

49. The plaintiffs reallege the preceding paragraphs as though fully set out here.

50. The Washington and Federal Constitutions safeguard speech rights. U.S. Const. Amend. I, Wash. Const. Art. I, § 5. This includes the right to access truthful information as "a necessary predicate to the recipient's meaningful exercise of his own right of speech." *Board of Educ., Island Trees Union Free School Dist. No. 26 v. Pico*, 457 U.S. 853, 867, 102 S. Ct. 2799, 73 L. Ed. 2d 435 (1982).

51. The Fair Chance Housing Ordinance violates speech rights on its face and as applied by prohibiting individuals and organizations from accessing and sharing truthful information about housing applicants. This prohibition targets speech based on content, speaker identity, and purpose. The Ordinance forbids anyone from inquiring after criminal background for the purpose of vetting housing applicants, but it does not forbid such inquiries for other purposes. This burden on RHA's and landlords' speech rights must satisfy heightened judicial scrutiny.

///

# COUNT II

**The Fair Chance Housing Ordinance violates substantive due process because it uses an unreasonable, overbroad, and unduly burdensome means to achieve its purpose**

52. The plaintiffs reallege the preceding paragraphs as though fully set out here.

53. Article I, Section 3, of the state constitution states: "No person shall be deprived of life, liberty, or property, without due process of law." The guarantee of due process requires that all government actions that restrict individual's liberty or property rights must sufficiently relate to a legitimate end of government; otherwise, the action is void. *Presbytery of Seattle v. King County*, 114 Wn.2d 320, 330-31, 787 P.2d 907 (1990).

54. The Fourteenth Amendment to the U.S. Constitution states: "nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

55. The City enacted the Fair Chance Housing Ordinance to try to assist individuals in reintegrating into society after release from incarceration. That is a laudable goal. But the City's chosen means to achieve that goal are unnecessary, unreasonable, and impose an undue burden on private landlords' right to select their tenants.

56. The studies collected in the City clerk's file report that recidivism rates vary based on a variety of factors that are only discoverable through screening, including the type and seriousness of crime committed, the number of convictions, the age of the individual when the crime was committed, and the number of years that passed without criminal activity. *See The Importance of Housing for Formerly Incarcerated Individuals*, 40(2) Housing Law Bulletin 60 (2010) (reporting that 79% of California's parolees either return to prison or abscond); Megan Kurlychek, Robert

COMPLAINT - 14 of 18

PACIFIC LEGAL FOUNDATION
10940 NE 33rd Place, Suite 210
Bellevue, Washington 98004
(425) 576-0484

Brame & Shawn Bushway, *Scarlet Letters and Recidivism: Does an Old Criminal Record Predict Future Offending?*, 5(3) Criminology & Public Policy 483, 486-90, 500 (2006) (discussing factors that affect recidivism rates). Indeed, the City's studies conclude that there is a high risk of future offenses during the first three years after release from custody, when nearly two-thirds of recently incarcerated individuals reoffend. *See* Kurlychek, et al., at 485. Thus, based on data showing that after seven years the overall risk of recidivism returns to a level similar to that of a person who has never been incarcerated, the study reported that case-by-case consideration of criminal convictions for up to seven years may be warranted. *Id*. at 499.

57. The Fair Chance Housing Ordinance, however, makes this type of meaningful, case-by-case screening unlawful, declaring it a *per se* "unfair practice" to inquire about any criminal convictions.

58. The Ordinance's recitals make several statements that are unsupported by fact or law. For example, the recitals incorrectly state that screening is discretionary; private landlords are under no legal obligation to conduct a criminal background check on prospective tenants. Landlords, however, have a legally recognized duty to protect tenants from harm by third parties, including from other tenants. *See*, *e.g.*, *Griffin*, 97 Wn. App. at 570 (Landlords may be held liable for the foreseeable criminal activities of third parties.); *Sigman*, 118 Wn.2d at 447 (Landlords may be held criminally liable for certain crimes committed by tenants.). Indeed, one of the key studies relied on by the City argues that tort reform relieving landlords of liability for criminal acts of tenants must occur before landlords can be asked to stop considering applicants' criminal records. *See* Merf Ehman and Anna Reosti, *Tenant Screening in an Era of Mass Incarceration: A Criminal Record is No Crystal Ball*, NYU J. of Leg. & Pub. Pol'y Quorum (Mar. 2015).

59. The recitals also grossly generalize the conclusions contained in a handful of studies commenting on the problems faced by individuals after release from incarceration, making it appear that access to the private housing market is necessary for successful reintegration into society. To the contrary, the studies conclude that *assisted public housing* is the only viable option for many recently incarcerated individuals—particularly in Seattle where private rental properties are very expensive. *See The Importance of Housing for Formerly Incarcerated Individuals*, 40(2) Housing Law Bulletin 60 (2010).

60. The recitals also omit key facts and conclusions reached by the studies when asserting that "there is no sociological research establishing a relationship between a criminal record and an unsuccessful tenancy." The study cited reported on the success of supportive public housing (providing at-risk individuals with health and social services as well as housing subsidies) in reintegrating chronically homeless individuals with a history of incarceration into society. *See* Ehman and Reosti, *supra* at 17. The study repeatedly warned that "findings from supportive housing programs may not be completely generalizable to other housing contexts on account of the unique resources and social services made available to residents." *Id*. at 17 n.116, 19 n.131 ("Because the study presented here involved individuals with specific characteristics (lengthy homelessness and behavioral health disorders) who received a particular intervention (supportive housing), generalizing the results of our study to other situations may not be valid.") (citation omitted). The study concluded only that chronically homeless adults with incarceration histories may benefit as much from supportive housing programs as chronically homeless adults with no criminal histories. *Id*. at 18. The study argues that public housing providers (like the City of Seattle itself) should reconsider their "one strike" policy of excluding persons with criminal histories from

COMPLAINT - 16 of 18

1  applying for public housing. *Id*. The Ordinance, however, excludes public housing providers from restrictions on criminal history screening.

61. There are less oppressive ways for the City to advance its interest in assisting individuals reintegrating into society after release from incarceration. For example, one study the City cites relied on Oregon's fair housing law (Oregon S.B. 91 (2013)) as an "optimal" example of a law that would remove discriminatory barriers to private housing while protecting against high-risk tenants. Rebecca Vallas, et al., *Removing Barriers to Opportunity for Parents with Criminal Records and Their Children: A Two-Generation Approach* at 19 (Center for American Progress 2015). Unlike Seattle's Fair Chance Housing Ordinance, the Oregon law only prohibits consideration of arrests or charges that did not result in a conviction. Oregon S.B. 91, Sec. 3(2). The law expressly authorizes a landlord to consider criminal convictions for a drug-related crime, a violent crime, a sex offense, a crime involving financial fraud, theft or forgery, or any other crime that would adversely affect the "property of the landlord or tenant" or the "health, safety or right to peaceful enjoyment of the premises of the residents, the landlord or the landlord's agent." *Id*. at Sec.3(3).

62. The "Fair Chance Housing Ordinance" violates the guarantee of due process on its face.

## VIII.   PRAYER FOR RELIEF

Plaintiffs pray for the following relief:

1. A declaration that Chapter 14.09 of the Seattle Municipal Code (the Fair Chance Housing Ordinance) facially violates the Free Speech and Due Process guarantees of the Washington State Constitution and the United States Constitution;

COMPLAINT - 17 of 18

PACIFIC LEGAL FOUNDATION
10940 NE 33rd Place, Suite 210
Bellevue, Washington 98004
(425) 576-0484

1       2. A permanent injunction forbidding the City from enforcing the Fair Chance Housing

2    Ordinance and its implementing regulation;

3       3. An award of reasonable attorney's fees, expenses, and costs as allowed by law and

4    equity, including RCW 4.84.010 and RCW 7.24.100; and

5       4. Such other relief as the Court deems just and proper.

                                                                     PACIFIC LEGAL FOUNDATION

Date:  May 1, 2018.                                                   By:  s/  Ethan W. Blevins
                                                                     Ethan W. Blevins, WSBA No. 48219
                                                                     Brian T. Hodges, WSBA No. 31976
                                                                     10940 NE 33rd Place, Suite 210
                                                                     Bellevue Washington 98004
                                                                     Telephone: (425) 576-0484
                                                               Email: EBlevins@pacificlegal.org
                                                                       BHodges@pacificlegal.org

                                                                         *Attorneys for Plaintiffs*