Honorable Judge John C. Coughenour

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| CHONG and MARILYN YIM, KELLY LYLES, EILEEN, LLC, and RENTAL HOUSING ASSOCIATION OF WASHINGTON, | Civil Action No. 2:18-cv-00736-JCC |
| Plaintiffs, | **SUPPLEMENTAL BRIEF ON PLAINTIFFS' DUE PROCESS CLAIMS** |
| v. | |
| THE CITY OF SEATTLE, a Washington Municipal corporation, | |
| Defendant. | |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................. 1

ARGUMENT..................................................................................................................... 1

I.   The Washington Court's Determination of "Current Federal Law" Is Improper, Wrongly Decided, and Nonbinding ................................................................................. 1

II.  The Fair Chance Housing Ordinance Still Fails To Satisfy Rational Basis Review .......... 4

  A. Failure To Account for Differences in Criminal History Is Arbitrary ............................ 4

  B. The Exemption for Federally Assisted Housing Has No Rational Relationship to the City's Objective .................................................................................................... 6

CONCLUSION.................................................................................................................. 8

CERTIFICATE OF SERVICE ............................................................................................. 9

*Supp. Brief on P.s' Due Process Claims* - i
*2:18-cv-00736-JCC*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agostini v. Felton*, 521 U.S. 203 (1997) ................................................................2

*City of Cleburne, Tex. v. Cleburne Living Center*,
    473 U.S. 432 (1985) ...........................................................................................7

*City of Houston v. Hill*, 482 U.S. 451 (1987) .........................................................1

*Cty. of Sacramento v. Lewis*, 523 U.S. 833 (1998) ................................................4

*Engle v. Isaac*, 456 U.S. 107 (1982) .....................................................................3

*Goldblatt v. Town of Hempstead, N.Y.*, 369 U.S. 590 (1962) ........................1, 2, 3

*Hart v. Massanari*, 266 F.3d 1155 (9th Cir. 2001) ...............................................2

*Haynes v. State of Wash.*, 373 U.S. 503 (1963) .....................................................3

*Heath v. Alabama*, 474 U.S. 82 (1985) .................................................................3

*Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595 (2013) ...................4, 5

*Lawton v. Steele*, 152 U.S. 133 (1894) ...............................................................2, 3

*Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528 (2005) ......................................1, 2, 3

*Moore v. East Cleveland*, 431 U.S. 494 (1977) .....................................................3

*Moran v. Screening Pros, LLC*, No. 2:12-cv-05808-SVW-AGR, 2012 WL
    10655744 (C.D. Cal. Sep. 28, 2012) *reversed on other grounds by*
    943 F.3d 1175 (9th Cir. 2019) ...........................................................................5

*Mugler v. Kansas*, 123 U.S. 623, 8 S. Ct. 273 (1887) ...........................................4

*Nebbia v. New York*, 291 U.S. 502 (1934) .............................................................3

*Nectow v. City of Cambridge*, 277 U.S. 183 (1928) ............................................2, 3

*North Dakota State Bd. of Pharmacy v. Snyder's Drug Stores, Inc.*,
    414 U.S. 156 (1973) ...........................................................................................3

*Nunez-Reyes v. Holder*, 646 F.3d 684 (9th Cir. 2011) ..........................................3

*Pension Ben. Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717 (1984) ...................3

*State Oil Co. v. Khan*, 522 U.S. 3 (1997) ..............................................................2

*Stogner v. California*, 539 U.S. 607 (2003) ...........................................................3

*TXO Prod. Corp. v. All. Res. Corp.*, 509 U.S. 443 (1993) .....................................3

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

*United States Department of Agriculture v. Moreno*,

413 U.S. 528 (1973)..................................................................................7

*United States v. Carlton*, 512 U.S. 26 (1994) ...............................................3

*United States v. Hatter*, 532 U.S. 557 (2001) ...............................................3

*United States v. Weiland*, 420 F.3d 1062 (9th Cir. 2005)................................2

*Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365 (1926) ....................2, 3

*Yim v. City of Seattle*, 194 Wn.2d 651 (2019) (*Yim I*) ..................................4

*Yim v. City of Seattle*, 194 Wn.2d 682 (2019) ......................................1, 2, 4

**Other Authorities**

24 C.F.R. § 982.553(a)(1)(ii)(C), (2)(i) ........................................................7

2016/2017 Civil Right, Utilities, Economic Development & Arts Committee,

1:20:35–21:37 (Seattle.gov Aug. 8, 2017), http://seattlechannel.org/mayor-

and-council/city-council/2016/2017-civil-rights-utilities-economic-

development-and-arts-committee?videoid=x79673&Mode2=Video .......................7

Alper, Mariel and Durose, Matthew, Recidivism of Sex Offenders Released from

State Prison, Bureau of Justice Statistics (May 2019),

https://www.bjs.gov/content/pub/pdf/rsorsp9yfu0514.pdf ..............................6

diZerega, Margaret and Agudelo, Sandra Villalobos, "Piloting a Tool for Reentry:

A Promising Approach to Engaging Family Members," Vera Institute of

Justice, (2011), https://www.vera.org/downloads/Publications/piloting-a-tool-

for-reentry-a-promising-approach-to-engaging-family-

members/legacy_downloads/Piloting-a-Tool-for-Reentry-Updated.pdf. .................5

The Importance of Stable Housing for Formerly Incarcerated Individuals,

Housing Law Bulletin, Volume 40, https://www.nhlp.org/files/Importance of

Stable Housing for Formerly Incarcerated_0.pdf .........................................5

Kurlychek, Megan, et al. "Scarlet Letters & Recidivism: Does an Old Criminal

Record Predict Future Criminal Behavior?" 5 Criminology & Pub. Pol'y 483

(2006).........................................................................................5

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

Vallas, Rebecca, et al., "Removing Barriers to Opportunity for Parents with

    Criminal Records and Their Children: A Two Generation Approach",

    https://www.americanprogress.org/issues/

    poverty/reports/2015/12/10/126902/removing-barriers-to-opportunity-for-

    parents-with-criminal-records-and-their-children/ ....................................................5

Seattle Municipal Code

    SMC 14.09.025(A)(3) ................................................................................................6

    SMC 14.09.115........................................................................................................6, 7

*Supp. Brief on P.s' Due Process Claims* - iv
*2:18-cv-00736-JCC*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

**INTRODUCTION**

On November 14, 2019, the Washington Supreme Court issued its opinion answering questions certified by this Court regarding the proper standard of review for due process claims under the Washington State Constitution. *Yim v. City of Seattle*, 194 Wn.2d 682 (2019). The court answered the questions by concluding that the state due process guarantee parallels the federal due process guarantee. *See Yim*, 194 Wn.2d at 690–92. The opinion should have ended there. But it did not. Instead, the court ventured far beyond the certified questions to purport to dictate to this Court the "current federal law" of due process. *Id.* at 693. In so doing the Washington court suggested that federal courts should ignore binding United States Supreme Court precedent that requires courts to determine whether the means chosen to impair a property right are "reasonably necessary for the accomplishment of the [public] purpose, and not unduly oppressive upon individuals." *Goldblatt v. Town of Hempstead, N.Y.*, 369 U.S. 590, 594 (1962). In fact, on January 9, 2020, the Washington Supreme Court amended its opinion,[1] at the City of Seattle's request, to remove a direct quotation from the U.S. Supreme Court holding that substantive due process requires "a means-ends test" to determine "whether a regulation of private property is *effective* in achieving some legitimate public purpose." *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 542 (2005).

This Court should decline to follow the Washington court's non-binding and erroneous views on federal law. Alternatively, the Court should hold that the Fair Chance Housing Ordinance fails even under the Washington court's spin on rational basis.

**ARGUMENT**

I.   **The Washington Court's Determination of "Current Federal Law" Is Improper, Wrongly Decided, and Nonbinding**

The Washington court should have confined its opinion to the meaning of the Washington due process guarantee. *City of Houston v. Hill*, 482 U.S. 451, 471 n.23 (1987) ("[C]ertified questions should be confined to uncertain questions of state law."). Instead, the majority opted to

---

[1] *See Yim*, No. 96817-9, Order Amending Opinion (Jan. 9, 2020) (attached as exhibit A).

*Supp. Brief on P.s' Due Process Claims* - 1
2:18-cv-00736-JCC

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

entertain Seattle's improper argument that the U.S. Supreme Court had impliedly overruled four of its opinions establishing the "substantially related" and "unduly burdensome" tests. *Yim*, 194 Wn.2d at 694–96; *but see Agostini v. Felton*, 521 U.S. 203, 237–38 (1997) (admonishing that the Court does not overrule a precedent by implication). The Washington court adopted the City's dubious argument, ruling that "[a]s a matter of current federal law," the tests announced by *Lawton v. Steele*, 152 U.S. 133, 137 (1894); *Nectow v. City of Cambridge*, 277 U.S. 183, 188 (1928); *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926); and *Goldblatt*, 369 U.S. at 594, are no longer valid. This gratuitous foray into the meaning of federal law is improper and nonbinding.

The Washington court's acknowledgement that "plaintiffs correctly point out that the United States Supreme Court has never explicitly overruled the 'unduly oppressive' language that originated in *Lawton* and was repeated in *Goldblatt*" should have resolved the federal question. *Yim*, 194 Wn.2d at 694. The federal courts are "bound to follow" an on-point decision of the U.S. Supreme Court settling questions of federal constitutional law "until it is explicitly overruled by that Court." *United States v. Weiland*, 420 F.3d 1062, 1079 n.16 (9th Cir. 2005); *Hart v. Massanari*, 266 F.3d 1155, 1175 (9th Cir. 2001) ("A district court . . . has no choice but to follow [binding precedent], even if convinced that such authority was wrongly decided."). Nonetheless, the Washington court concluded that *Lingle* had impliedly overruled the "substantial relation" and "unduly oppressive" tests, eliminating any evaluation of means-ends fit under rational basis. *See Yim*, 194 Wn.2d at 694–95; *but see State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) ("[I]t is this Court's prerogative alone to overrule one of its precedents.").

Even so, a plain reading of *Lingle* belies the state court's interpretation. *Lingle* involved one narrow question: "whether the 'substantially advances' formula announced in *Agins v. City of Tiburon* is an appropriate test for determining whether a regulation effects a Fifth Amendment taking." *Lingle*, 544 U.S. at 532. The U.S. Supreme Court answered, "no": "We conclude this formula prescribes an inquiry in the nature of a due process, not a takings test, and that it has no proper place in our takings jurisprudence." *Id.* at 540. Critically, *Lingle* emphasized that its holding

*Supp. Brief on P.s' Due Process Claims* - 2
2:18-cv-00736-JCC

*Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(425) 576-0484*

"does not require us to disturb any of our prior holdings." *Id.* at 545. This disproves the Washington court's reasoning that *Lingle's* takings ruling overruled due process cases like *Lawton*, *Euclid*, *Nectow*, or *Goldblatt*; indeed, *Lingle* made no mention of the "unduly oppressive" inquiry whatsoever. Thus, even if *Lingle*'s discussion of substantive due process were in tension with the Court's prior holdings, the rule of precedent requiring an "unduly oppressive" analysis remains in full force. *United States v. Hatter*, 532 U.S. 557, 567 (2001); *Nunez-Reyes v. Holder*, 646 F.3d 684, 692 (9th Cir. 2011) ("As a circuit court, even if recent Supreme Court jurisprudence has perhaps called into question the continuing viability of its precedent, we are bound to follow a controlling Supreme Court precedent until it is explicitly overruled by that Court.") (cleaned up).

Moreover, in purporting to overrule the "substantial relation" and "unduly oppressive" inquiries, the Washington court overlooked Supreme Court precedents requiring meaningful means-ends analysis. *See, e.g.*, *Moore v. East Cleveland*, 431 U.S. 494, 498 n.6 (1977) ("[O]ur cases have not departed from the requirement that the government's chosen means must rationally further some legitimate state purpose."); *North Dakota State Bd. of Pharmacy v. Snyder's Drug Stores, Inc.*, 414 U.S. 156, 167 (1973) (the means selected must have "a manifest tendency to cure or at least to make the evil less"); *Nebbia v. New York*, 291 U.S. 502, 525 (1934) ("[T]he means selected shall have a real and substantial relation to the objective sought to be attained."). The Washington court also overlooked Supreme Court caselaw explaining that the undue oppression test is simply another way of showing irrationality.[2] *Haynes v. State of Wash.*, 373 U.S. 503, 519 (1963) ("There is no reasonable or rational basis for claiming that the oppressive and unfair methods [are] in any way essential to the [government objective]."); *United States v. Carlton*, 512 U.S. 26, 30 (1994) (The "harsh and oppressive" formulation "does not differ from the

---

[2] The U.S. Supreme Court applies the "unduly oppressive" test in a variety of rational basis contexts. *See, e.g.*, *Stogner v. California*, 539 U.S. 607, 653 (2003) (due process protects against oppressive prosecution); *TXO Prod. Corp. v. All. Res. Corp.*, 509 U.S. 443, 453–54 (1993) (oppressive fines violate due process); *Heath v. Alabama*, 474 U.S. 82, 103 (1985) (relentless prosecutorial action is unduly oppressive and violates due process); *Pension Ben. Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 733 (1984) (retroactive legislation may violate due process if it is harsh and oppressive); *Engle v. Isaac*, 456 U.S. 107, 133 (1982) (oppressive shifting of the burden of proof violates due process).

*Supp. Brief on P.s' Due Process Claims* - 3
2:18-cv-00736-JCC

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

prohibition against arbitrary and irrational legislation . . ."); *see also Mugler v. Kansas*, 123 U.S. 623, 8 S. Ct. 273, 289 (1887) (Due process prohibits laws "that are unnecessary, and that will be oppressive to the citizen."); *see also Cty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998) (Due process prevents government "from abusing [its] power, or employing it as an instrument of oppression."). This Court should therefore resolve the substantive due process question by following the U.S. Supreme Court's cases as argued in Plaintiffs' summary judgment briefing. *See* P.s' MSJ at 17–21; P.s' Opp. and Reply at 27–30.

## II.   The Fair Chance Housing Ordinance Still Fails To Satisfy Rational Basis Review

Based on its incomplete and incorrect understanding of federal due process law, the Washington court adopted a radically relaxed version of rational basis that authorizes courts to "assume the existence of any necessary state of facts which it can reasonably conceive" in order to determine that a rational relationship exists. *Yim v. City of Seattle*, 194 Wn.2d 651, 675 (2019) (*Yim I*). Even under that reflexively deferential standard, the Washington due process guarantee still "protects against arbitrary and capricious government action." *Yim*, 194 Wn.2d at 688. The Fair Chance Housing Ordinance is so arbitrary that it fails even this minimal standard.[3]

### A.   Failure To Account for Differences in Criminal History Is Arbitrary

The City adopted the Ordinance in order to help people with criminal histories successfully reintegrate back into society and to address the racial impacts of the criminal justice system. *See* City of Seattle Ordinance 125393 at 1–5. As written, however, the Ordinance bears no relation— hypothetical or otherwise—to those stated purposes. The tenant selection process has no connection to the criminal justice system. Thus, restrictions on private landlords cannot undo the harm caused by the government's prosecution of racial minorities and, therefore, impose the type of burden shifting prohibited by due process. *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 618 (2013) (Due process protects property owners "from an unfair allocation of public burdens.").

---

[3] Appropriately, the Washington court expressed no view on the application of its newly devised federal standard. *See generally Yim*, 194 Wn.2d 682.

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

The City's recidivism objective, too, bears no relation to the Ordinance's blanket ban on inquiries about an applicant's criminal history and its ban on tenancy decisions based on criminal history. Indeed, the City's decision to impose a blanket ban renders any connection to its stated goals arbitrary and irrational because it fails to take into consideration its own studies concluding that the seriousness of the crime, number of convictions, and the time since the last conviction are the primary drivers when determining recidivism rates.[4] The City also overlooked studies concluding that the "income-limiting" effect of a criminal history makes private housing "unattainable" for many ex-offenders; thus, the studies suggested reforming laws that create barriers to affordable public housing that provides support services like drug/alcohol and job counseling is essential for people with criminal histories to reintegrate into society.[5] *See* SR 511 n.116, 512. Indeed, the City's studies concluded that private housing, due to its high cost, may in fact result in higher eviction rates and housing instability, which in turn increases recidivism rates. *See id.* There is nothing in the legislative record rebutting the simple truth that a conviction record, depending on the seriousness of the crime, may bear directly on tenant reliability or community safety—both of which are valid, nondiscriminatory bases for tenant selection. *See Moran v. Screening Pros, LLC*, No. 2:12-cv-05808-SVW-AGR, 2012 WL 10655744 at *7 (C.D. Cal. Sep. 28, 2012) ("[C]ommon sense dictates that a consumer's criminal record can provide insight into their creditworthiness and credit capacity.") (*reversed on other grounds by* 943 F.3d 1175 (9th Cir. 2019)). Yet the Ordinance treats a single minor drug conviction the same as murder or multiple

---

[4] The Importance of Stable Housing for Formerly Incarcerated Individuals, Housing Law Bulletin, Volume 40, https://www.nhlp.org/files/Importance of Stable Housing for Formerly Incarcerated_0.pdf; Megan Kurlychek, et al. "Scarlet Letters & Recidivism: Does an Old Criminal Record Predict Future Criminal Behavior?" 5 Criminology & Pub. Pol'y 483 (2006).

[5] Rebecca Vallas, et al., "Removing Barriers to Opportunity for Parents with Criminal Records and Their Children: A Two Generation Approach", https://www.americanprogress.org/issues/ poverty/reports/2015/12/10/126902/removing-barriers-to-opportunity-for-parents-with-criminal- records-and-their-children/; Margaret diZerega and Sandra Villalobos Agudelo, "Piloting a Tool for Reentry: A Promising Approach to Engaging Family Members," 9-10, Vera Institute of Justice, (2011), https://www.vera.org/downloads/Publications/piloting-a-tool-for-reentry-a-promising- approach-to-engaging-family-members/legacy_downloads/Piloting-a-Tool-for-Reentry- Updated.pdf.

*Supp. Brief on P.s' Due Process Claims* - 5
2:18-cv-00736-JCC

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

convictions of arson, as if those offenses raise identical considerations when selecting who will be invited to live in an apartment community or in a duplex where children live.

The narrow exception for sex offender status only underscores the City's arbitrary approach. *See* SMC 14.09.025(A)(3). Someone on a sex offender registry for possessing child pornography can be denied tenancy for that offense if a landlord demonstrates a legitimate business reason, but someone convicted for murder, armed robbery, or arson cannot, whatever the landlord's reason may be.[6]

There is no indication, moreover, that Seattle's landlords are using criminal history as a proxy for discriminatory tenancy decisions. To the contrary, the City's own evidence demonstrates that landlords who check criminal background do so to determine the gravity of the underlying offense. Landlords in the study cited by the City indicated that they were largely unconcerned with drug-related and other non-violent crimes, but the likelihood that they may not offer a unit to someone with a criminal background rose when the background offense was more severe, such as violent felonies. *See* P.s' Opp. and Reply at 13–15. The City's failure to recognize obvious distinctions among the wide variety of criminal backgrounds is arbitrary and irrational.

**B.    The Exemption for Federally Assisted Housing Has No Rational Relationship to the City's Objective**

As discussed at some length in prior briefing, the City's exemption for federally assisted housing severely undermines the Ordinance's constitutionality, even under a weakened rational basis standard. *See* P.s' MSJ at 10–13; P.s' Opp. and Reply at 16–18.

The Ordinance does "not apply to an adverse action taken by landlords of federally assisted housing." SMC 14.09.115. This exclusion conflicts with the Ordinance's objectives by broadening the range of offenses that trigger federally mandated denial. As a funding condition, federal regulations require denial of tenancy in federally assisted housing for certain narrow offenses: "manufacture or production of methamphetamine on the premises of federally assisted housing"

---

[6] Sex offenders have lower rates of recidivism than other types of offenders. *See* Mariel Alper and Matthew Durose, Recidivism of Sex Offenders Released from State Prison, Bureau of Justice Statistics (May 2019), https://www.bjs.gov/content/pub/pdf/rsorsp9yfu0514.pdf.

*Supp. Brief on P.s' Due Process Claims - 6*
*2:18-cv-00736-JCC*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

or offenses "subject to a lifetime registration requirement under a State sex offender registry program." 24 C.F.R. § 982.553(a)(1)(ii)(C), (2)(i).

The exclusion, however, allows landlords of federally assisted units—the very type of affordable and stable housing that is needed to successfully reintegrate—to take adverse action regarding any criminal history, "including *but not limited to* when any member of the household is subject to a lifetime sex offender registration requirement under a state sex offender registration program and/or convicted of manufacture or production of methamphetamine on the premises of federally assisted housing." SMC 14.09.115 (emphasis added). This language makes clear that the city council was aware of what federal law required and expressly elected to extend the exclusion beyond it. Yet the City's evidence indicates that supportive housing programs that fall within the exemption are more likely to help the formerly incarcerated establish a stable residence. *See* SR 511 n.116, 512. The federally assisted housing exemption cuts directly against the city's purported interests. *See City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 446 (1985) ("The State may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational."). In this sense, the background check ban is much like the irrational law in *United States Department of Agriculture v. Moreno*, which forbade food stamps to households of non-related persons, which were also the households most likely to need government aid. *See* 413 U.S. 528, 538 (1973) (noting that the law "excludes from participation in the food stamp program . . . only those persons who are so desperately in need of aid that they cannot even afford to alter their living arrangements so as to retain their eligibility.").[7]

While the bill remained in committee, city council member Deborah Juarez expressed a concern that exempting certain landlords from the Fair Chance Housing Ordinance would raise serious equal protection and due process concerns. 2016/2017 Civil Right, Utilities, Economic

---

[7] The Ordinance also draws arbitrary distinctions between living arrangements. For instance, a landlord renting a detached accessory dwelling unit can check criminal history, while a landlord living in one unit of a duplex cannot check criminal history when renting the other unit. *See* SMC 14.09.115(D). Similarly, a roommate who subleases may check criminal history, yet a landlord leasing directly to multiple roommates cannot. *See id.*

*Supp. Brief on P.s' Due Process Claims* - 7
2:18-cv-00736-JCC

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

Development & Arts Committee, 1:20:35–21:37 (Seattle.gov Aug. 8, 2017).[8] She was right. The arbitrary exclusion of the most important category of housing for the formerly incarcerated fails rational basis.

## CONCLUSION

This Court should decide for itself what federal due process standards demand. Even so, the Fair Chance Housing Ordinance fails under the Washington court's mistaken view of federal law.

DATED:  March 13, 2020.

Respectfully submitted,

By: s/  BRIAN T. HODGES
By: s/  ETHAN W. BLEVINS
Brian T. Hodges, WSBA # 31976
Ethan W. Blevins, WSBA # 48219
Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
Telephone: (425) 576-0484
Email: BHodges@pacificlegal.org
Email: EBlevins@pacificlegal.org

Attorneys for Plaintiffs

---

[8] http://seattlechannel.org/mayor-and-council/city-council/2016/2017-civil-rights-utilities-economic-development-and-arts-committee?videoid=x79673&Mode2=Video.

*Supp. Brief on P.s' Due Process Claims - 8*
*2:18-cv-00736-JCC*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

1

## CERTIFICATE OF SERVICE

2

  I hereby certify that on March 13, 2020, I caused the foregoing to be electronically filed

3

4

with the Clerk of the Court using the CM/ECF, system which will send notification to all counsel

of record.

5

6

  Dated: March 13, 2020.

7

          s/  ETHAN W. BLEVINS

8

          Ethan W. Blevins, WSBA # 48219

9

          Attorney for Plaintiffs

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

*Supp. Brief on P.s' Due Process Claims - 9*
*2:18-cv-00736-JCC*

*Pacific Legal Foundation*
*255 South King Street, Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*