Honorable Judge John C. Coughenour

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| CHONG and MARILYN YIM, KELLY LYLES, EILEEN, LLC, and RENTAL HOUSING ASSOCIATION OF WASHINGTON,<br><br>　　　Plaintiffs,<br>v.<br><br>THE CITY OF SEATTLE, a Washington Municipal corporation,<br><br>　　　Defendant. | Civil Action No. 2:18-cv-00736-JCC<br><br>**RESPONSE AND REPLY IN SUPPORT OF SUPPLEMENTAL BRIEF ON PLAINTIFFS' DUE PROCESS CLAIMS** |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................. 2

   I.    Due Process Requires a Means-Ends Fit........................................................................ 2

   II.   Rational Basis Review Looks to Whether a Law Actually Furthers a Legitimate Interest ......................................................................................................... 4

   III.  The Fair Chance Housing Ordinance Cannot Satisfy Rational Basis ............................. 6

       A.    The Ordinance's Identical Treatment of Different Offenses Is Irrational ................... 7

*Response and Reply iso Supp. Brief on*
*P.s' Due Process Claims* - i
2:18-cv-00736-JCC

*Pacific Legal Foundation*
*255 South King St., Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

B.  The Exemption for Federally Assisted Housing Is Irrational and Arbitrary ............... 8

CONCLUSION .................................................................................................................. 10

CERTIFICATE OF SERVICE ........................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ballard v. Hunter*, 204 U.S. 241 (1907) ............................................................................ 4

*Bettendorf v. St. Croix Cty.*, 631 F.3d 421 (7th Cir. 2011) ................................................ 3

*Borden's Farm Products Co. v. Baldwin*, 293 U.S. 194 (1934) ......................................... 4

*City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432 (1985) .............. 4, 5, 6

*Eisenstadt v. Baird*, 405 U.S. 438 (1972) .......................................................................... 6

*FCC v. Beach Communications*, 508 U.S. 307 (1993) ................................................. 5, 6

*Ferguson v. Skrupa*, 372 U.S. 726 (1963) ........................................................................ 4

*Gladden v. Richbourg*, 759 F.3d 960 (8th Cir. 2014) ........................................................ 3

*Goldblatt v. Town of Hempstead, N.Y.*, 369 U.S. 590 (1962) .................................... 1, 3, 7

*Greene v. United States*, 440 F.3d 1304 (Fed. Cir. 2006) ................................................. 3

*Guertin v. State*, 912 F.3d 907 (6th Cir. 2019) .................................................................. 3

*Haynes v. State of Wash.*, 373 U.S. 503 (1963) ................................................................ 7

*Heller v. Doe*, 509 U.S. 312 (1993) ........................................................................ 4, 5, 10

*Holland v. Rosen*, 895 F.3d 272 (3d Cir. 2018) ................................................................ 3

*Kelo v. City of New London*, 545 U.S. 469 (2005) ........................................................... 5

*Lawrence v. Texas*, 539 U.S. 558 (2003) ........................................................................... 5

*Lawton v. Steele*, 152 U.S. 133 (1894) .......................................................................... 1, 3

*Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528 (2005) ..................................................... 2, 3

*Mathews v. Lucas*, 427 U.S. 495 (1976) ........................................................................ 1, 6

*Nebbia v. New York*, 291 U.S. 502 (1934) ............................................................. 1, 3, 4, 6

*Nectow v. Cambridge*, 277 U.S. 183 (1928) ............................................................. 1, 3, 5

*Nestle Waters N. Am., Inc. v. City of New York*,
    689 F. App'x 87 (2d Cir. 2017) ................................................................................... 3

*Nollan v. California Coastal Comm'n*, 483 U.S. 825 (1987) ............................................ 2

*Pension Benefit Guaranty Corporation v. R.A. Gray & Co.*,
    467 U.S. 717 (1984) .................................................................................................... 7

*Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244 (5th Cir. 2003) .................................. 3

*Romer v. Evans*, 517 U.S. 620 (1996) ..................................................................... 5, 6, 9

*Sherwood v. Oklahoma Cty.*, 42 F. App'x 353 (10th Cir. 2002) ....................................... 3

*St. Joseph Abbey v. Castille*, 712 F.3d 215 (5th Cir. 2013) .............................................. 6

*Response and Reply iso Supp. Brief on*
*P.s' Due Process Claims* - ii
2:18-cv-00736-JCC

*Pacific Legal Foundation*
*255 South King St., Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

*State v. Moore*, 7 Wash. 173 (1893) ................................................................................................1, 3
*Susan Virginia Parker v. Henry & William Evans Home for Children, Inc.*,
     762 F. App'x 147 (4th Cir. 2019) ..........................................................................................3
*Terrace v. Thompson*, 263 U.S. 197 (1923).................................................................................1
*Torromeo v. Town of Fremont, NH*, 438 F.3d 113 (1st Cir. 2006)..............................................3
*U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528 (1973) .................................................................6
*United States v. Carlton*, 512 U.S. 26 (1994) ..........................................................................1, 7
*United States v. Carolene Products*, 304 U.S. 153 (1938) .........................................................6
*United States v. Weiland*, 420 F.3d 1062 (9th Cir. 2005)...........................................................3
*Vandevere v. Lloyd*, 644 F.3d 957 (9th Cir. 2011) .....................................................................3
*Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365 (1926) .............................................1, 2, 3
*Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) ..............................................................5
*Waldman v. Conway*, 871 F.3d 1283 (11th Cir. 2017) ...............................................................3
*Washington Teachers' Union Local No. 6, Am. Fed'n of Teachers, AFL-CIO v.
     Bd. of Educ. of the D.C.*, 109 F.3d 774 (D.C. Cir. 1997)......................................................3
*Weinberger v. Wiesenfeld*, 420 U.S. 636 (1975)........................................................................6

**Statutes**

24 C.F.R. § 982.2 ..........................................................................................................................10
24 C.F.R. § 982.553(a)(2)(i) .........................................................................................................10
24 C.F.R. § 983.2 ..........................................................................................................................10
Seattle Ordinance 125393 ..........................................................................................................1, 9
SMC 14.09 .....................................................................................................................................10
SMC 14.09.115 ..............................................................................................................................10

**Other Authorities**

National Coalition for the Homeless, Federal Housing Assistance Programs
     (2007), http://www.nationalhomeless.org/publications/facts/Federal.pdf..............................10
Sandefur, Timothy, *Rational Basis and the 12(b)(6) Motion: An Unnecessary
     "Perplexity"*, 25 Geo. Mason U. Civ. Rts. L.J. 43 (2014) ......................................................6
Seattle Housing Authority, Annual Report 1 (2018),
     https://www.seattlehousing.org/sites/default/files/2018_Annual_Report.pdf........................10

*Response and Reply iso Supp. Brief on*
*P.s' Due Process Claims* - iii
2:18-cv-00736-JCC

*Pacific Legal Foundation*
*255 South King St., Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

**INTRODUCTION**

The City of Seattle (City) argues the background check ban satisfies due process if the ban is intended to advance a legitimate goal, without regard to whether the restriction actually advances the stated goal and without regard to its unduly oppressive impact. The City's standard is contrary to binding precedent, which requires that "the means selected shall have a real and substantial relation to the objective sought to be attained." *Nebbia v. New York*, 291 U.S. 502, 525 (1934).

Plaintiffs are entitled to a searching level of scrutiny under the "substantial relation" test set out by *Nectow v. Cambridge*, 277 U.S. 183, 187–88 (1928), and *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926). But even if this Court opted to apply rational basis review, that test remains a meaningful limit on government power. *See Mathews v. Lucas*, 427 U.S. 495, 510 (1976) (Rational basis is not "toothless"). A law fails rational basis if evidence demonstrates that the law lacks a sufficient means-ends fit and is, therefore, not rationally related to the government's stated interest. Moreover, whether the Court applies rational basis or substantial relation, a law's oppressiveness is relevant. *Goldblatt v. Town of Hempstead, N.Y.*, 369 U.S. 590, 594 (1962); *Lawton v. Steele*, 152 U.S. 133, 137 (1894); *see also United States v. Carlton*, 512 U.S. 26, 30 (1994) (The "harsh and oppressive" formulation "does not differ from the prohibition against arbitrary and irrational legislation"). The City's ordinance fails under either standard. The ordinance bars landlords from asking about or relying on criminal history in making a long-lasting decision about who will occupy their property—a right protected by the Fourteenth Amendment.[1]

The City claims to have enacted the law to assist ex-convicts with reentry and combat the disparate impact that the criminal justice system imposes on certain racial groups. *See* City of Seattle Ordinance 125393. The ordinance, however, does not rationally relate to its stated objectives in at least two respects. First, it treats all criminal history identically, with an arbitrary exception for any offense that places an adult offender on a sex offender registry. The irrational result is that a landlord can deny tenancy to someone with a decades-old sex offense, but not for

---

[1] *Terrace v. Thompson*, 263 U.S. 197, 215 (1923) (The right to "dispose of [property] for lawful purposes" is recognized as an "essential attribute[] of property" and protected by the Fourteenth Amendment).

Response and Reply iso Supp. Brief on
P.s' Due Process Claims - 1
2:18-cv-00736-JCC

*Pacific Legal Foundation*
*255 South King St., Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

someone with multiple convictions for arson, assault, or even murder. Second, the ordinance exempts the most important category of housing for ex-offenders: assisted housing programs. The City has never disputed the record evidence that access to assisted housing is more important for reintegration than private housing, nor has it argued that its concern regarding the disparate impact of criminal records does not apply to federally assisted housing. Plaintiffs therefore ask that this Court grant their motion for summary judgment and deny the City's cross-motion.

## ARGUMENT

This litigation raises two overarching questions regarding substantive due process: first, does heightened scrutiny apply to property deprivations? And second, if rational basis is the correct standard, what does that standard demand? The parties have extensively briefed the first question, but the second deserves more attention. Rational basis demands more than the City recognizes. It requires an objectively reasonable means-ends fit when the government deprives a person of property, not simply a hypothetical link to a conceivable government purpose, as the City argues. Reasonableness includes regard for whether the impact of the regulation is unduly oppressive.

### I.  Due Process Requires a Means-Ends Fit

The City asks this Court to ignore numerous Supreme Court opinions requiring "a means-ends test" aimed at determining "whether a regulation of private property is *effective* in achieving some legitimate public purpose." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 542 (2005); *see also Nollan v. California Coastal Comm'n*, 483 U.S. 825, 834 n.3 (1987) ("We have required that the regulation substantially advance the legitimate state interest sought to be achieved, not that the State could rationally have decided that the measure adopted might have achieved the State's objective."); *see also Moore v. East Cleveland*, 431 U.S. 494, 498 n.6 (1977) ("[O]ur cases have not departed from the requirement that the government's chosen means must rationally further some legitimate state purpose."). Indeed, *Euclid* requires that courts evaluate the "circumstances and conditions" of the case. *Euclid*, 272 U.S. at 387–88. And, in *Nectow*, the Court held that an ordinance violated due process upon a "determinative" finding that the property restriction would not promote the law's stated objective. 277 U.S. at 188. This is an objective means-ends analysis.

*Response and Reply iso Supp. Brief on*
*P.s' Due Process Claims* - 2
2:18-cv-00736-JCC

*Pacific Legal Foundation*
*255 South King St., Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

The City insists that *Lingle v. Chevron* impliedly rejected the "substantial relation" prong of due process in favor of minimal rational basis. City's Supp. Brief at 5 n.22. Not so. *Lingle* simply excised "substantially advances" from the regulatory takings test while confirming that it remains a valid due process inquiry. 544 U.S. at 540 ("We conclude that this [substantially advances] formula prescribes an inquiry in the nature of a due process, not a takings, test, and that it has no place in our takings jurisprudence."). The Court in fact emphasized that its ruling "does not require us to disturb any of our prior holdings." *Id*. at 545.[2] The "means-ends" inquiry required by *Euclid*, *Nectow*, *Moore*, and *Nebbia* is necessary to determine the existence of a "substantial relation" and remains valid. So, too, is the "undue oppression" inquiry required by *Goldblatt*, 369 U.S. at 594, and *Lawton*, 152 U.S. at 137.

Perhaps aware that *Lingle* offers no foothold, the City argues that this Court should decline to follow binding precedent because the cases cited by Plaintiffs are old—as if Supreme Court case law is issued with a sell-by date. *See* City's Supp. Brief at 7 ("*Mugler* . . . is a nineteenth century relic . . . ."); *see also id.* at 5 ("Plaintiffs offer no opinion favorably citing *Goldbatt*'s invocation of 'undue oppression' since the Court issued it in 1962"). Plus, the federal circuit courts still apply these heightened inquiries in property cases.[3]

The City also casts Supreme Court caselaw establishing the "substantial relation" and "unduly oppressive" tests as outdated relics of *Lochner*-era jurisprudence. City's Supp. Brief at 5.

---

[2] The City has offered no response to Plaintiffs' citation to the fundamental principle that federal courts are bound by Supreme Court caselaw "until it is explicitly overruled by that Court." *United States v. Weiland*, 420 F.3d 1062, 1079 n.16 (9th Cir. 2005); *see also* Plaintiffs' Supp. Brief at 2.

[3] *See, e.g., Susan Virginia Parker v. Henry & William Evans Home for Children, Inc.*, 762 F. App'x 147, 158 (4th Cir. 2019); *Guertin v. State*, 912 F.3d 907, 917 (6th Cir. 2019); *Holland v. Rosen*, 895 F.3d 272, 292 (3d Cir. 2018); *Waldman v. Conway*, 871 F.3d 1283, 1292 (11th Cir. 2017); *Nestle Waters N. Am., Inc. v. City of New York*, 689 F. App'x 87, 88 (2d Cir. 2017); *Gladden v. Richbourg*, 759 F.3d 960, 964 (8th Cir. 2014); *Vandevere v. Lloyd*, 644 F.3d 957, 969 (9th Cir. 2011); *Bettendorf v. St. Croix Cty.*, 631 F.3d 421, 426 (7th Cir. 2011); *Torromeo v. Town of Fremont, NH*, 438 F.3d 113, 118 (1st Cir. 2006); *Greene v. United States*, 440 F.3d 1304, 1314 (Fed. Cir. 2006); *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 248 (5th Cir. 2003); *Sherwood v. Oklahoma Cty.*, 42 F. App'x 353, 357 (10th Cir. 2002); *Washington Teachers' Union Local No. 6, Am. Fed'n of Teachers, AFL-CIO v. Bd. of Educ. of the D.C.*, 109 F.3d 774, 781 (D.C. Cir. 1997).

Response and Reply iso Supp. Brief on
P.s' Due Process Claims - 3
2:18-cv-00736-JCC

*Pacific Legal Foundation*
*255 South King St., Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

But *Lochner* did not involve unduly oppressive government action. The Supreme Court overruled *Lochner* because it authorized courts to substitute their own policy judgments for the legislature's. *Ferguson v. Skrupa*, 372 U.S. 726, 729 (1963). By contrast, courts assess whether a law is "arbitrary, oppressive, and unjust . . . without interfering with that large discretion which every legislative power has." *Ballard v. Hunter*, 204 U.S. 241, 256 (1907). Thus, the Supreme Court has never extended the repudiation of *Lochner* to the "substantially advances" or "unduly oppressive" inquiries.

## II. Rational Basis Review Looks to Whether a Law Actually Furthers a Legitimate Interest

Under either the "substantial relation" or rational basis standard, due process requires a means-ends fit. Although the rational basis test presumes that a challenged law has a rational relationship to a legitimate end, plaintiffs can rebut this presumption through evidence of irrationality. The case that inaugurated the modern rational basis test, *Nebbia*, confirmed that, while constitutionality is presumed, "the reasonableness of each regulation depends upon the relevant facts." 291 U.S. at 511. *See also Borden's Farm Products Co. v. Baldwin*, 293 U.S. 194, 209 (1934) (weight given to a government's means and objective is "not a conclusive presumption, or a rule of law which makes legislative action invulnerable to constitutional assault. Nor is such an immunity achieved by treating any fanciful conjecture as enough to repel attack."). This evidence-based approach remains valid today, requiring that "even the standard of rationality as we so often have defined it must find some footing in the realities of the subject addressed by the legislation." *Heller v. Doe*, 509 U.S. 312, 321 (1993).

This evidentiary approach is visible in cases like *City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432 (1985). *Cleburne* asked whether a zoning ordinance that forbade operation of a home for the mentally handicapped violated equal protection. Applying rational basis, the Court still considered whether the zoning ordinance in fact satisfied the government's purported objectives. *See id.* at 446. Although rational basis review is deferential, "[t]he State may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the

*Response and Reply iso Supp. Brief on*
*P.s' Due Process Claims* - 4
2:18-cv-00736-JCC

*Pacific Legal Foundation*
*255 South King St., Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

distinction arbitrary and irrational." *Id.* at 446. The City of Cleburne argued that the zoning ordinance would protect handicapped occupants from harassment and that placing the home in a floodplain raised safety concerns. *Id.* at 449. As in *Nectow*, the Court looked to whether the zoning ordinance was actually effective in achieving these goals: "Because in our view the record does not reveal any rational basis for believing the Featherston home would pose any special threat to the city's legitimate interests, we affirm the judgment below insofar as it holds the ordinance invalid as applied in this case." *Id.* at 448. Hence, courts applying rational basis to deprivations of property rights must look to facts in the record.

The City, however, advocates for a rational basis test that divorces the due process inquiry from fact. According to the City, this Court can simply imagine a rational basis. City's Supp. Brief at 8. For this proposition, the City cites to *FCC v. Beach Communications*, 508 U.S. 307, 313 (1993), which stated that a law subject to rational basis review "must be upheld . . . if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." This statement, however, runs contrary to the overwhelming weight of authority before and since *Beach Communications*, establishing that a plaintiff can rebut the presumption of constitutionality with evidence of irrationality based on the actual objectives of the challenged law.[4] Importantly, it is

---

[4] *See, e.g.*, *Kelo v. City of New London*, 545 U.S. 469, 491 (2005) (courts applying rational basis "should treat the [claim] as a serious one and review the record to see if it has merit") (Kennedy, J., concurring); *Lawrence v. Texas*, 539 U.S. 558, 582 (2003) (evaluating an anti-sodomy law under rational basis based on the state's actual objective, not a hypothetical one); *Village of Willowbrook v. Olech*, 528 U.S. 562, 565 (2000) (holding that a plaintiff can succeed on a rational basis challenge "quite apart from the [government]'s subjective motivation" if the law doesn't have an objectively rational relationship to a legitimate government interest); *Romer v. Evans*, 517 U.S. 620, 632 (1996) ("[E]ven in . . . the most deferential of standards, we insist on knowing the relation between the classification adopted and the object to be attained. The search for the link between classification and objective gives substance to [rational basis]."); *Heller*, 509 U.S. at 321 ("[E]ven the standard of rationality as we so often have defined it must find some footing in the realities of the subject addressed by the legislation."); *Cleburne Living Center*, 473 U.S. at 448 ("[I]n our view *the record does not reveal* any rational basis.") (emphasis added); *Weinberger v. Wiesenfeld*, 420 U.S. 636, 648 n.16 (1975) (judges apply rational basis should not "accept at face value assertions of legislative purposes, when an examination of the legislative scheme and its history demonstrates that the asserted purpose could not have been a goal of the legislation"); *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 537 (1973) (invalidating food stamp restrictions on unrelated co-inhabitants under rational basis review because "*in practical effect*, the challenged

Response and Reply iso Supp. Brief on
P.s' Due Process Claims - 5
2:18-cv-00736-JCC

*Pacific Legal Foundation*
*255 South King St., Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

contrary to *City of Cleburne*, which is a property rights case more similar to this case than *Beach Communications*, which dealt with differential treatment of cable television operators.

As a practical matter, rational basis as articulated by the City would render the test a nullity, since "a plaintiff could not possibly disprove an infinite set of theoretically imaginable facts and speculations so as to prove the law irrational, especially if the genuine facts she relies upon to prove this are declared irrelevant at the outset." Timothy Sandefur, *Rational Basis and the 12(b)(6) Motion: An Unnecessary "Perplexity"*, 25 Geo. Mason U. Civ. Rts. L.J. 43, 47 (2014); *see also Beach Communications*, 508 U.S. at 323 n.3 (Stevens, J., concurring) ("Judicial review under the 'conceivable set of facts' test is tantamount to no review at all"). Such excessive deference clashes with the Supreme Court's insistence that rational basis is not "toothless." *Mathews*, 427 U.S. at 510. Instead, for rational basis to impose any genuine limit on government power, courts should "insist on knowing the relation between the classification adopted and the object to be attained." *Romer*, 517 U.S. at 632. A law subject even to the most deferential form of scrutiny must still be "narrow enough in scope and grounded in a sufficient factual context for us to ascertain some relation between the classification and the purpose it serve[s]." *Id.* at 632–33.

## III.   The Fair Chance Housing Ordinance Cannot Satisfy Rational Basis

The background check ban fails rational basis. A regulation's effect on an individual's rights bears on whether the regulation is arbitrary or capricious. Hence, a law that is "unduly oppressive" fails to satisfy substantive due process, even in the context of rational basis review. *See Goldblatt*, 369 U.S. at 594. This means that courts must determine whether the destruction of

---

classification simply does not operate so as rationally to further the prevention of fraud.") (emphasis added); *Eisenstadt v. Baird*, 405 U.S. 438, 450–52 (1972) ("The Supreme Judicial Court . . . held that the purpose of the amendment was to serve the health needs of the community . . . . It is plain that Massachusetts had no such purpose in mind . . . ."); *United States v. Carolene Products*, 304 U.S. 153–54 (1938) ("[W]e recognize that the constitutionality of a statute, valid on its face, may be assailed by proof of facts tending to show that the statute as applied to a particular article is without support in reason."); *Nebbia*, 291 U.S. at 511 ("[T]he reasonableness of each regulation depends upon the relevant facts."); *St. Joseph Abbey v. Castille*, 712 F.3d 215, 223 (5th Cir. 2013) (A "perfectly rational statement of hypothesized footings" for a law will not stand if "betrayed by the undisputed facts.").

Response and Reply iso Supp. Brief on
P.s' Due Process Claims - 6
2:18-cv-00736-JCC

*Pacific Legal Foundation*
*255 South King St., Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

a protected right—here, the right to select whom one will invite into a lease of private property—is "reasonably necessary for the accomplishment of the [public] purpose, and not unduly oppressive upon individuals." *Goldblatt*, 369 U.S. at 594. Evaluation of the law's effect is a necessary component of due process because "[t]here is no reasonable or rational basis for claiming that the oppressive and unfair methods [are] in any way essential to the [government objective]." *Haynes v. State of Wash.*, 373 U.S. 503, 519 (1963); *Carlton*, 512 U.S. at 30 (The "harsh and oppressive" formulation "does not differ from the prohibition against arbitrary and irrational legislation"). As already discussed at some length in prior briefing, the ordinance is unduly oppressive—a factor that even the City concedes is part of rational basis.[5] *See* Plaintiffs' Motion for Summary Judgment at 17–20, Dkt. # 23; Plaintiffs' Opp. and Reply at 28–30 (reading *Pension Benefit Guaranty Corporation v. R.A. Gray & Co.*, 467 U.S. 717, 733 (1984), as confirming that an unduly oppressive standard "does not differ from the prohibition against arbitrary and irrational legislation."). On this basis alone, the Court should grant summary judgment for plaintiffs. Additionally, Seattle's ordinance is arbitrary and irrational because it fails to make rational distinctions between criminal offenses, and it irrationally exempts the most important category of housing for successful reintegration.

    A.    **The Ordinance's Identical Treatment of Different Offenses Is Irrational**

As the Yims argued in their opening supplemental brief, the ordinance is irrational in its approach to different convictions. The ordinance treats minor misdemeanors the same as a major violent felony. A landlord is forbidden from taking adverse action based on either a shoplifting or murder conviction, despite profound differences in the underlying offenses. Yet the ordinance provides that a landlord can deny someone tenancy based on a state sex offender registry, regardless of the underlying offense that resulted in sex offender registration, if she can articulate a legitimate business reason. The result is an irrational system that forces landlords to rent to

---

[5] The City notes that Plaintiffs' supplemental brief did not address how the undue oppression or substantial relation standards apply here. *See* City's Supp. Brief at 7. Plaintiffs applied those factors at great length in their summary judgment briefing, and there is no need to belabor the Court with repetitive argument. Plaintiffs' MSJ at 17–21; Plaintiffs' Opp. and Reply at 27–30.

Response and Reply iso Supp. Brief on
P.s' Due Process Claims - 7
2:18-cv-00736-JCC

*Pacific Legal Foundation*
*255 South King St., Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

individuals with grave criminal convictions—even a long history of violent criminal behavior—while allowing them to deny tenancy based on a single, long-ago sex offense.

The City's only response to this arbitrary classification is to call sex offenses a "unique type of crime." City's Supp. Brief at 10. That argument, however, merely begs the question whether a blanket prohibition on screening criminal histories is arbitrary. Indeed, the City offers no rationale for treating someone with a decades-old misdemeanor on his record just like a recently released murderer, or treating repeated convictions for assault or drug manufacturing just like a single guilty plea for driving with a suspended license. Nor does it explain why landlords are allowed a legitimate business reason for excluding someone convicted of a sex crime but cannot have a legitimate business reason for excluding someone convicted of multiple counts of arson or assault. Moreover, the City does not explain what makes a sex offense "unique" when compared to other violent crimes. It presents no evidence, for instance, that racial minorities are not as disproportionately affected by sex offenses (the basis stated in the ordinance's findings). The City cites a statistic that sex offenders are more likely than other offenders to be arrested later for rape or sexual assault, City's Supp. Brief at 10, but that says nothing about sex offenders' overall recidivism rate in comparison to other offenders, nor does it explain why landlords have *less* of a legitimate interest in denying an application where the applicant has committed a serious violent crime with a high recidivism rate or has a record showing repeated criminal behavior.[6]

**B.     The Exemption for Federally Assisted Housing Is Irrational and Arbitrary**

The exemption for federally assisted housing remains the most visibly arbitrary component of the ordinance. *See* SMC 14.09.115. By freeing all federally assisted housing from the ban on the use of criminal history, the City has ensured that the most important category of housing for successful reintegration is harder for ex-offenders to secure. The City has never questioned the record evidence that assisted housing is the most important category of housing for ex-offenders.

---

[6] Indeed, as plaintiffs have already noted, sex offenders have a markedly lower recidivism rate than other ex-offenders. *See* Plaintiffs' Supp. Brief at 6 n.6.

*Response and Reply iso Supp. Brief on*
*P.s' Due Process Claims* - 8
2:18-cv-00736-JCC

*Pacific Legal Foundation*
*255 South King St., Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

Hence, the exemption bears no rational relationship to the City's objectives in either reducing the disparate impact of criminal background checks or promoting successful reintegration.[7]

The City continues to wrongly insist that this exemption is required by federal law. Avoiding federal preemption is likely a legitimate government interest, but the City's exemption is not rationally related to that end. It expressly extends beyond what federal regulations require, arbitrarily burdening the landlords least equipped to help ex-offenders reintegrate. *See* Plaintiffs' Supp. Brief at 7. This broad exception is not "narrow enough in scope and grounded in a sufficient factual context for [this Court] to ascertain some relation between the classification and the purpose it served." *Romer*, 517 U.S. at 632–33.

The City calls the "federally assisted" housing exemption "narrow," perhaps implying that the exemption is insignificant because it either does not apply to many people or only exempts federally assisted housing from a narrow component of the ordinance. *See* City's Supp. Brief at 11. But the federally assisted housing exemption is not, in fact, narrow in either respect. While the term "federally assisted" is undefined, a reasonable reading of the ordinance would at least include project-based and voucher-based housing because the federal regulations requiring limited criminal background screening apply to these two types of federally assisted housing.[8] If "federally assisted" refers to housing for vouchers and project-based housing, that indicates that a substantial portion of the Seattle housing market is exempt from the criminal background check ban. In 2018,

---

[7] The City seeks to downplay the problem of exempting the housing most beneficial for preventing recidivism by arguing that reducing recidivism is not in fact an objective of the ordinance. City's Supp. Brief at 9. The ordinance's recitals make clear that the Ordinance has two primary objectives: reducing disparate impact of criminal background and preventing recidivism. *See, e.g.*, City of Seattle Ordinance 125393 ("WHEREAS, a study by the Vera Institute of Justice has shown that people with stable housing are more likely to successfully reintegrate into society and are less likely to reoffend"); *id.* ("WHEREAS, research shows higher recidivism occurs within the first two years of release and is mitigated when individuals have access to safe and affordable housing and employment"). Excluding the housing most likely to result in successful reintegration does not rationally relate to either objective.

[8] 24 C.F.R. § 982.2 establishes that the background check requirements established by HUD (24 C.F.R. § 982.553(a)(2)(i)) apply to tenant-based housing assistance, i.e. section 8 vouchers. 24 C.F.R. § 983.2 establishes that the background check requirements likewise apply to project-based housing assistance.

*Response and Reply iso Supp. Brief on*
*P.s' Due Process Claims* - 9
2:18-cv-00736-JCC

*Pacific Legal Foundation*
*255 South King St., Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*

a total of 18,658 households would qualify as "federally assisted" under this definition. *See* Seattle Housing Authority, Annual Report 1 (2018).[9] But "federally assisted" likely extends further. For example, many housing projects rent to low-income households as part of the Low-Income Housing Tax Credit program. *See* The Urban Institute, The Low-Income Housing Tax Credit: How It Works and Who It Serves (2018).[10] A plain reading of the ordinance would include such housing as "federally assisted."[11] This further underscores the arbitrariness of the exemption, since housing providers eligible for the Low-Income Housing Tax Credit are not subject to federal regulations requiring denial for certain types of criminal history. In short, the City's exemption for federally assisted housing lacks any "footing in the realities of the subject addressed by the legislation." *Heller*, 509 U.S. at 321.

Nor is the exemption for federally assisted housing "narrow" in any legal sense. The exemption applies far beyond what federal law requires, and the exemption does not just apply to a minor technicality. *See* SMC 14.09.115. Preventing adverse action based on criminal history is the hallmark of the ordinance, as evidenced by the title of the chapter in the municipal code: "Use of Criminal Records in Housing." *See* SMC 14.09. Exempting a vital category of housing for the formerly incarcerated is far from trivial or narrow.

## CONCLUSION

The criminal background check ban violates the First and Fourteenth Amendments to the United States Constitution. This Court should therefore grant Plaintiffs' motion for summary judgment and deny the City's cross-motion.

---

[9] https://www.seattlehousing.org/sites/default/files/2018_Annual_Report.pdf.
[10] https://www.urban.org/sites/default/files/publication/98758/lithc_how_it_works_and_who_it_serves_final_0.pdf.
[11] There are other forms of housing that would also appear to qualify as "federally assisted," such as supportive housing for the elderly or persons with disabilities, the Home Investment Partnership Program, rural rental housing loans, and farm labor housing loans and grants. National Coalition for the Homeless, Federal Housing Assistance Programs (2007), http://www.nationalhomeless.org/publications/facts/Federal.pdf.

Response and Reply iso Supp. Brief on
P.s' Due Process Claims - 10
2:18-cv-00736-JCC

Pacific Legal Foundation
255 South King St., Suite 800
Seattle, Washington 98104
(425) 576-0484

DATED: May 1, 2020.

Respectfully submitted,

By: s/ BRIAN T. HODGES
By: s/ ETHAN W. BLEVINS
Brian T. Hodges, WSBA # 31976
Ethan W. Blevins, WSBA # 48219
Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
Telephone: (425) 576-0484
Email: BHodges@pacificlegal.org
Email: EBlevins@pacificlegal.org

Attorneys for Plaintiffs

*Response and Reply iso Supp. Brief on
P.s' Due Process Claims* - 11
2:18-cv-00736-JCC

*Pacific Legal Foundation
255 South King St., Suite 800
Seattle, Washington 98104
(425) 576-0484*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 1, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF, system which will send notification to all counsel of record.

s/ ETHAN W. BLEVINS
Ethan W. Blevins, WSBA # 48219

Attorney for Plaintiffs

*Response and Reply iso Supp. Brief on P.s' Due Process Claims* - 12
2:18-cv-00736-JCC

*Pacific Legal Foundation*
*255 South King St., Suite 800*
*Seattle, Washington 98104*
*(425) 576-0484*