Case 2:18-cv-00736-JCC   Document 80-1   Filed 03/31/21   Page 1 of 8

Pacific Coast Horseshoeing School, Inc. v. Kirchmeyer, 961 F.3d 1062 (2020)
377 Ed. Law Rep. 849, 20 Cal. Daily Op. Serv. 5490, 2020 Daily Journal D.A.R. 5506

961 F.3d 1062
United States Court of Appeals, Ninth Circuit.

PACIFIC COAST HORSESHOEING SCHOOL, INC.; Bob Smith; Esteban Narez, Plaintiffs-Appellants,
v.
Kimberly KIRCHMEYER, in her Official Capacity as Director of Consumer Affairs; Michael Marion, in his Official Capacity as Chief of the Bureau for Private and Postsecondary Education, Defendants-Appellees.

No. 18-15840
|
Argued and Submitted October 24, 2019 San Francisco, California
|
Filed June 10, 2020

**Synopsis**
**Background:** California's only horseshoeing school, farrier teacher who offered class at school for those who would like to learn the art and craft of horseshoeing, and prospective student brought action against Director of Consumer Affairs and Chief of the Bureau for Private and Postsecondary Education, in their official capacities, alleging that ability-to-benefit requirement in California's Private Postsecondary Education Act (PPEA) forced vocational school to deny application of prospective student in violation of school's and prospective student's First Amendment right to academic freedom, and seeking injunctive and declaratory relief. The United States District Court for the Eastern District of California, John A. Mendez, J., 315 F.Supp.3d 1195, granted defendants' motion to dismiss for failure to state a claim. Plaintiffs appealed.

**Holdings:** The Court of Appeals, Bybee, Senior Circuit Judge, held that:

ability-to-benefit requirement regulates speech, and thus plaintiffs stated a First Amendment claim, and

ability-to-benefit requirement was content-based, thus requiring heightened First Amendment scrutiny.

Reversed and remanded.

**Attorneys and Law Firms**

 *1065  Paul V. Avelar (argued) and Keith E. Diggs, Institute for Justice, Tempe, Arizona; Bradley A. Benbrook and Stephen M. Duvernay, Benbrook Law Group PC, Sacramento, California; for Plaintiffs-Appellants.

P. Patty Li (argued), Deputy Attorney General; Paul Stein, Supervising Deputy Attorney General; Thomas S. Patterson, Senior Assistant Attorney General; Xavier Becerra, Attorney General; Attorney General's Office, San Francisco, California; for Defendants-Appellees.

Eugene Volokh (argued), Professor of Law, Scott & Cyan Banister First Amendment Clinic, UCLA School of Law, Los Angeles, California; Rodney A. Smolla, Dean & Professor of Law, Widener University, Delaware Law School, Wilmington, Delaware; for Amici Curiae Professors Jane Bambauer, David Bernstein, Clay Calvert, Mark Lemley, Rodney Smolla, and Eugene Volokh.

Seth E. Mermin and Cindy Pan, Center for Consumer Law and Economic Justice, Berkeley, California; Thomas Bennigson, Public Good Law Center, Berkeley, California; for Amici Curiae Housing and Economic Rights Advocates, Consumers Union, Project on Predatory Student Lending, and UC Berkeley Center for Consumer Law and Economic Justice.

Appeal from the United States District Court for the Eastern District of California, John A. Mendez, District Judge, Presiding, D.C. No. 2:17-cv-02217-JAM-GGH

Before: Michael J. Melloy,[*] Jay S. Bybee, and N. Randy Smith, Circuit Judges.

**OPINION**

BYBEE, Circuit Judge:

Plaintiff Bob Smith is an experienced farrier and offers classes for those who would like to learn the art and craft of horseshoeing. Plaintiff Esteban Narez is experienced with horses and would like to enroll in Smith's classes to become a

professional farrier. But because Narez does not have a high school diploma or GED, California's Private Postsecondary Education Act of 2009 ("PPEA" or "the Act") prohibits him from enrolling in Smith's courses unless Narez first passes an examination prescribed by the U.S. Department of Education. But if Smith were running a flight school or teaching golf, dancing, or contract bridge, Narez could enroll without restriction.

We are asked to decide whether the Act burdens plaintiffs' free speech. The district court determined that the Act did not. We conclude that plaintiffs have stated a claim that the PPEA burdens their rights under the First Amendment. We therefore reverse and remand to the district court for further proceedings.

 **\*1066** I. BACKGROUND

A. *Statutory Framework*
In the PPEA, Cal. Educ. Code § 94800 *et seq.*, the California legislature found that, as of 2013, more than 300,000 Californians were attending more than 1100 private postsecondary schools in California. *Id.* § 94801(a). The legislature acknowledged that such schools "can complement the public education system and help develop a trained workforce to meet the demands of California businesses and the economy." *Id.* § 94801(b). Nevertheless, the legislature expressed its "concern[ ] about the value of degrees and diplomas issued by private postsecondary schools," and found that the "lack of protections" for "consumers of those schools' services" and the possibility of "fraudulent or substandard educational programs and degrees" demonstrated "the need for strong state-level oversight of private postsecondary schools." *Id.* § 94801(b), (d)(6).[1] To that end, California sought to ensure that students who enrolled in private postsecondary schools would actually benefit from such programs and regulate contracts between students and any "private entity with a physical presence in [California] that offers postsecondary education to the public for an institutional charge." *Id.* § 94858. The Act defines a category of students, known as "[a]bility-to-benefit student[s]," as those students "who do[ ] not have a certificate of graduation from a school providing secondary education, or a recognized equivalent of that certificate." *Id.* § 94811.

Any student wishing to enroll in a private postsecondary school must execute an enrollment agreement, signed by the student and an authorized employee of the school. *Id.* § 94902(a). Critically for this case, no "ability-to-benefit student may execute an enrollment agreement" unless "the institution shall have the student take an independently administered examination from the list of examinations prescribed by the United States Department of Education." *Id.* § 94904(a); *see also* Higher Education Act of 1965, 20 U.S.C. § 1091(d)(1)(A)(i). "[U]nless the student achieves a score ... demonstrating that the student may benefit from the education and training being offered," "[t]he student shall not enroll." Cal. Educ. Code § 94904(a).

The PPEA exempts certain courses and a number of private institutions from these requirements. For example, educational programs "sponsored by a bona fide trade, business, professional, or fraternal organization" are exempt, so long as the program is provided "solely for that organization's membership." *Id.* § 94874(b)(1). Also exempt are courses offering "avocational or recreational education programs"; "[t]est preparation for examinations required for admission to a postsecondary education institution," such as the SAT or ACT; "[c]ontinuing education or license examination preparation"; and "[f]light instruction." *Id.* § 94874(a), (d)(1), (j). Aside from subject-matter exemptions, the PPEA exempts various institutions, including "[a]n institution that does not award degrees and that solely provides educational programs for total charges of [$2500] or less." *Id.* § 94874(f).

B. *Facts*
Narez has an affinity for horses and, after working with a farrier, decided to enroll in the Pacific Coast Horseshoeing School, Inc. ("PCHS").[2] He chose horseshoeing **\*1067** as a career because it pays well and there are no licensing requirements for farriers in California. Narez does not have a high-school diploma or a GED and is considered an ability-to-benefit student under the PPEA.

PCHS is California's only full-time horseshoeing school. It charges $6000 for an eight-week course, which includes both classroom and hands-on learning. Smith, the owner of PCHS, teaches the course himself. Because academic prowess is not needed to be a good farrier, Smith is willing to teach and accommodate less-educated students. If he determines at the end of the first week that a student will not benefit from the course, he refunds all but $250 of the tuition. As a private postsecondary-educational institution teaching a vocational skill, PCHS is subject to the PPEA. Following inspection by the Bureau of Postsecondary Education, PCHS began

Case 2:18-cv-00736-JCC   Document 80-1   Filed 03/31/21   Page 3 of 8

Pacific Coast Horseshoeing School, Inc. v. Kirchmeyer, 961 F.3d 1062 (2020)
377 Ed. Law Rep. 849, 20 Cal. Daily Op. Serv. 5490, 2020 Daily Journal D.A.R. 5506

declining admission to prospective students who did not have a high-school diploma or a GED or who had not passed an examination prescribed by the PPEA.

Narez alleges that no examination satisfying the ability-to-benefit requirement tests horseshoeing knowledge or skills. Because he works seven days a week, Narez does not want to forgo income to study for a test that has no relevance to horseshoeing. Absent the ability-to-benefit requirement, Narez alleges that he would enroll in PCHS and PCHS would accept him.

C. *Procedural History*

Smith, Narez, and PCHS filed this action challenging the ability-to-benefit requirement on First Amendment grounds. The defendants, two California-state officials ("California"), moved to dismiss the claim under Federal Rule of Civil Procedure 12(b)(6). The district court granted the motion. *Pac. Coast Horseshoeing Sch., Inc. v. Grafilo*, 315 F. Supp. 3d 1195 (E.D. Cal. 2018). The court concluded that the ability-to-benefit requirement does not prohibit the imparting or disseminating of information. Instead, it determined that the law regulates only conduct—the forming of an enrollment agreement—and any burdens on speech were "incidental," resulting from the government's regulation of commercial transactions. *Id.* at 1200. The district court thus concluded that plaintiffs failed to allege a First Amendment claim. *Id.* at 1200–02. This appeal followed.[3]

II. DISCUSSION

The First Amendment, which is made applicable to the states through the Due Process Clause of the Fourteenth Amendment, provides: "Congress shall make no law ... abridging the freedom of speech." U.S. Const. amend. I. This case raises two interrelated questions. First, is the PPEA subject to First Amendment scrutiny at all? That is, does the Act regulate speech? Second, if the Act regulates speech, is it content based? The answers to these questions are critical because they determine the level of scrutiny with which courts will review the PPEA and its ability-to-benefit requirement.

Ordinarily, we review challenges to legislation regulating commercial transactions **\*1068** under a rational-basis standard: a statute is consistent with the Due Process Clause if the legislature has identified a legitimate state interest and the legislation has a rational basis for furthering that interest. *See Pennell v. City of San Jose*, 485 U.S. 1, 11–13, 108 S.Ct. 849, 99 L.Ed.2d 1 (1988); *United States v. Carolene Prods. Co.*, 304 U.S. 144, 152–53, 58 S.Ct. 778, 82 L.Ed. 1234 (1938); *Retail Dig. Network, LLC v. Prieto*, 861 F.3d 839, 847 (9th Cir. 2017) (en banc). When, however, the legislation burdens a fundamental right, such as the right to free speech, we must examine the legislation with more exacting or "heightened scrutiny." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 640–41, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994); *Scheer v. Kelly*, 817 F.3d 1183, 1189 (9th Cir. 2016).

This heightened scrutiny generally takes one of two forms: intermediate scrutiny or strict scrutiny. If legislation regulates conduct but incidentally burdens expression, we review that legislation under "intermediate scrutiny" to see whether it "advances important governmental interests unrelated to the suppression of free speech and does not burden substantially more speech than necessary to further those interests." *Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 189, 117 S.Ct. 1174, 137 L.Ed.2d 369 (1997); *see also United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). We likewise review content-neutral restrictions on speech—such as time, place, and manner restrictions—under this same intermediate scrutiny standard. *See McCullen v. Coakley*, 573 U.S. 464, 486, 134 S.Ct. 2518, 189 L.Ed.2d 502 (2014) (noting that a content-neutral regulation of speech violates the First Amendment unless it is "narrowly tailored to serve a significant governmental interest." (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 796, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989)).) But if legislation regulates the content of the speech—when the government regulates who may speak or what we may say—then the law is ordinarily reviewed under "strict scrutiny": the legislation must serve a compelling state interest and must be narrowly tailored to meet that interest. *Reed v. Town of Gilbert*, 576 U.S. 155, 135 S. Ct. 2218, 2226, 192 L.Ed.2d 236 (2015); *see also United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000); *Recycle for Change v. City of Oakland*, 856 F.3d 666, 669 (9th Cir. 2017). However, intermediate scrutiny may apply to content-based restrictions on commercial speech. *See CTIA – The Wireless Ass'n v. City of Berkeley*, 928 F.3d 832, 842 (9th Cir. 2019) (explaining that "one size does not fit all in commercial speech cases" and contrasting *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), with *Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio*, 471 U.S. 626, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985)).

Case 2:18-cv-00736-JCC   Document 80-1   Filed 03/31/21   Page 4 of 8

Pacific Coast Horseshoeing School, Inc. v. Kirchmeyer, 961 F.3d 1062 (2020)
377 Ed. Law Rep. 849, 20 Cal. Daily Op. Serv. 5490, 2020 Daily Journal D.A.R. 5506

California maintains, and the district court concluded, that this case does not implicate speech at all and, therefore, the legislation must only satisfy rational-basis scrutiny. The state argues that the ability-to-benefit requirement is a consumer-protection provision that regulates only non-expressive conduct—namely, the execution of the enrollment agreement between a private postsecondary school and a prospective student. The district court agreed, reasoning that "the Act does not restrain Smith and the School from 'imparting information,' 'disseminating opinions,' or 'communicating a message.' " *Pac. Coast Horseshoeing Sch., Inc.*, 315 F. Supp. 3d at 1200 (quoting *Pickup v. Brown*, 740 F.3d 1208, 1230 (9th Cir. 2014), *abrogated by* **\*1069** *Nat'l Inst. of Family & Life Advocates v. Becerra*, ––– U.S. ––––, 138 S. Ct. 2361, 201 L.Ed.2d 835 (2018)). "[T]he only thing that the School cannot do is execute an enrollment agreement with a student who has not demonstrated an ability to benefit under the Act." *Id.* Thus, "[n]othing in the Act prohibits Smith and the School from sharing information and communicating about horseshoeing generally. Nothing prohibits Narez from learning about horseshoeing outside of enrollment at a private postsecondary educational institution prior to passing an ability-to-benefit-examination." *Id.* The district court concluded that the Act regulated "economic activity" that was "speech-adjacent" and imposed only an "incidental burden[ ] on speech." *Id.* Applying rational basis review, the court upheld the Act. *Id.* at 1200–02.

In our view, California "is wrong that the only thing actually at issue in this litigation is conduct." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 27, 130 S.Ct. 2705, 177 L.Ed.2d 355 (2010). Although the PPEA is a form of education licensing by the State, the First Amendment deprives the states of "unfettered power to reduce a group's First Amendment rights by simply imposing a licensing requirement." *Nat'l Inst. of Family & Life Advocates*, 138 S. Ct. at 2375. California points out that the Act regulates enrollment agreements. We agree, but when the Act is viewed in its entirety, it becomes clear that it controls more than contractual relations. It also regulates what kind of educational programs different institutions can offer to different students. Such a regulation squarely implicates the First Amendment. *See Humanitarian Law Project*, 561 U.S. at 28, 130 S.Ct. 2705 (noting that a law which "may be described as directed at conduct" nevertheless implicates speech where "the conduct triggering coverage under the statute consists of communicating a message"); *see also Thomas v. Collins*, 323 U.S. 516, 536, 65 S.Ct. 315, 89 L.Ed. 430 (1945) (highlighting how courts must consider a restriction's practical effects in determining whether it implicates speech).

There can be little question that vocational training is speech protected by the First Amendment. Smith's "speech to [students] imparts a 'specific skill' or communicates advice derived from 'specialized knowledge.' " *Humanitarian Law Project*, 561 U.S. at 27, 130 S.Ct. 2705. "Facts, after all, are the beginning point for much of the speech that is most essential to advance human knowledge and to conduct human affairs." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570, 131 S.Ct. 2653, 180 L.Ed.2d 544 (2011). And, important to this case, "[a]n individual's right to speak is implicated when information he or she possesses is subjected to 'restraints on the way in which the information might be used' or disseminated." *Id.* at 568, 131 S.Ct. 2653 (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984)). Furthermore, "the Constitution protects [Narez's] right to receive information and ideas." *Stanley v. Georgia*, 394 U.S. 557, 564, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). We have explained that when there is "a speaker who is willing to convey ... information," state "restriction[s] of the right to receive information" produce "actual injury" under the First Amendment. *Johnson v. Stuart*, 702 F.2d 193, 195 (9th Cir 1983). This right to receive information naturally extends to educational settings. *See Kleindienst v. Mandel*, 408 U.S. 753, 765, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972) (holding that students had a "constitutional interest" in hearing a Marxist theoretician speak at academic conferences and discussions in the United States). Thus, the PPEA implicates the First Amendment by restricting **\*1070** the rights of both speakers (Smith) and would-be listeners (Narez).

California contends that if we find that the PPEA implicates protected First Amendment speech, then we will "transform every law or regulation applicable to postsecondary educational institutions into a direct regulation of speech requiring strict scrutiny." California points out that generally applicable regulatory schemes—such as laws taxing income, controlling the use of property, and regulating employer-employee relations—do not implicate the First Amendment. We agree for the most part.[4] To be effective, the government must have the power to maintain public safety and order, and this requires the government to regulate aspects of our lives. In the main, governments can subject individuals and entities to "generally applicable economic regulations without creating constitutional problems." *Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575,

Case 2:18-cv-00736-JCC   Document 80-1   Filed 03/31/21   Page 5 of 8

**Pacific Coast Horseshoeing School, Inc. v. Kirchmeyer, 961 F.3d 1062 (2020)**
377 Ed. Law Rep. 849, 20 Cal. Daily Op. Serv. 5490, 2020 Daily Journal D.A.R. 5506

581, 103 S.Ct. 1365, 75 L.Ed.2d 295 (1983); *see also Sorrell*, 564 U.S. at 567, 131 S.Ct. 2653 ("It is true that restrictions on protected expression are distinct from restrictions on economic activity or, more generally, on nonexpressive conduct. It is also true that the First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech."). As a result, not every regulation that financially burdens a person or an institution affects its First Amendment rights. Although "[m]oney is fungible," *Humanitarian Law Project*, 561 U.S. at 31, 130 S.Ct. 2705, the fact that "[an organization] does not have as much money as it wants, and thus cannot exercise its freedom of speech as much as it would like" is irrelevant to whether its First Amendment rights have been infringed. *Regan v. Taxation with Representation of Wash.*, 461 U.S. 540, 550, 103 S.Ct. 1997, 76 L.Ed.2d 129 (1983). "[T]he Constitution does not confer an entitlement to such funds as may be necessary to realize all the advantages of that freedom." *Id.* (internal quotation marks omitted); *see also Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 892 (9th Cir. 2018) ("In other words, there exists no standalone right to receive the funds necessary to finance one's own speech.").

The question here is not whether the PPEA places a burden on private postsecondary institutions—it plainly does, as do California's tax, zoning, and workplace laws. *See Minneapolis Star*, 460 U.S. at 585, 103 S.Ct. 1365 ("We need not fear that government will destroy a selected group of taxpayers by burdensome taxation if it must impose the same burden on the rest of its constituency."). The question is whether, in the course of that regulation, the Act implicates heightened First Amendment scrutiny. One way for us to tell is to ask whether the PPEA differentiates between speech or speakers. *See Humanitarian Law Project*, 561 U.S. at 27–28, 130 S.Ct. 2705. It does. California's PPEA is riddled with exceptions to the ability-to-benefit rule, and the exceptions turn on one of two things: (1) the content of what is being taught, or (2) the identity of the speaker. Together these exceptions demonstrate that the Act does more than merely impose an incidental burden on speech: it "target[s] speech based on its **\*1071** communicative content." *Reed*, 135 S. Ct. at 2226. We begin with the first of these points.

An ability-to-benefit student (one not holding a high school diploma or a GED) may not enroll in a for-profit postsecondary educational institution without meeting the ability-to-benefit requirement. Cal. Educ. Code § 94904(a).[5] But the Act contains a number of exemptions that turn on the nature of what is being taught. If, for example, the course is "solely avocational or recreational," Cal. Educ. Code § 94874(a), then the course is not covered by the ability-to-benefit requirement. If, however, the course's content is *not* "solely avocational or recreational," the restriction is triggered and covered institutions cannot enroll certain students. *Id.* The fact that the Act distinguishes between, say, golf lessons because they are "solely avocational or recreational," and horseshoeing lessons because they are not, is significant—even if we assume that the state has no particular interest in encouraging speech related to golf lessons or suppressing speech related to horseshoeing. *See Reed*, 135 S. Ct. at 2230 ("[A] speech regulation targeted at specific subject matter is content based even if it does not discriminate among viewpoints within that subject matter."). Communication of factual information about horseshoeing surely qualifies as protected free speech the same as communication about golf. *See Sorrell*, 564 U.S. at 570, 131 S.Ct. 2653 (explaining that conveying factual information constitutes "the creation and dissemination of information [and] are speech within the meaning of the First Amendment"). The Act excepts other courses as well. *See, e.g.*, Cal. Educ. Code § 94874(d)(1) (exempting test preparation courses for standard examinations), (d)(2) (exempting test preparation courses for continuing education or license examinations), (j) (exempting flight instruction courses).

Second, the PPEA distinguishes between speakers. It picks winners and losers when it comes to which institutions must ensure that its listeners have satisfied the ability-to-benefit requirement. For example, the Act exempts "educational programs sponsored by a bona fide trade, business, professional, or fraternal organization, solely for that organization's membership." *Id.* § 94874(b)(1). There is a similar exemption for "a bona fide organization, association, or council that offers preapprenticeship training programs" approved by the California Workforce Development Board. *Id.* § 94874(b)(2)(A). There are exemptions for "[a] state-recognized professional licensing body ... that licenses persons in a particular profession, occupation, trade, or career field" or "[a] bona fide trade, business, or professional organization," *id.* § 94874(d)(2)(B), (C); for nonprofit religious organizations, *id.* § 94874(e)(1)[6]; for "[a]n institution that does not award degrees and that solely provides educational programs for total charges of [$2500 or less]," *id.* § 94874(f); for a "nonprofit public benefit corporation," *id.* § 94874(h); and for certain nonprofit **\*1072** "community-based organization[s]," *id.* § 94874(k)(1).

The PPEA thus *favors* particular kinds of speech and particular speakers through an extensive set of exemptions.[7] *See Sorrell*, 564 U.S. at 567, 131 S.Ct. 2653 ("[The state's] law does not simply have an effect on speech, but is directed at certain content and is aimed at particular speakers."); *Playboy Entm't Grp.*, 529 U.S. at 812, 120 S.Ct. 1878 ("Not only does [the statute] single out particular programming content for regulation, it also singles out particular programmers."). That means the PPEA necessarily *disfavors* all other speech and speakers. *See Sorrell*, 564 U.S. at 564, 131 S.Ct. 2653.

*Sorrell* is instructive in understanding these principles. There, the Supreme Court struck down a Vermont law that prohibited pharmacies from selling doctors' prescribing records to pharmaceutical companies, which the companies could then use to market prescription drugs to specific doctors. *Id.* at 557, 580, 131 S.Ct. 2653.[8] The statute, however, exempted entities that did not use the information for marketing purposes. *Id.* at 559–60, 131 S.Ct. 2653. And if the information somehow ended up in the hands of a pharmaceutical company, the statute proscribed that company's use of the information to market drugs to doctors absent certain circumstances. *Id.* at 559, 131 S.Ct. 2653. Pharmaceutical and data-mining companies challenged the law, claiming a violation of their First Amendment right to disseminate information. *Id.* at 561, 131 S.Ct. 2653.

Much like California in this case, Vermont argued that the case was really about regulating "conduct, not speech." *Id.* at 570, 131 S.Ct. 2653. Indeed, Vermont asserted that the prescription records were simply a "commodity," entitled to no more "First Amendment protection than 'beef jerky.' " *Id.* The Supreme Court flatly rejected this argument. It explained "that the creation and dissemination of information are speech within the meaning of the First Amendment." *Id.* The Court saw Vermont's law as presenting two major content-based restrictions. First, it "disfavor[ed] marketing, that is, speech with a particular content." *Id.* at 564, 131 S.Ct. 2653. Second, it "disfavor[ed] specific speakers, namely pharmaceutical manufacturers." *Id.*; *see id.* at 567, 131 S.Ct. 2653 ("Vermont's law imposes a burden based on the content of speech and the identity of the speaker."). This created a double burden on the companies' speech rights, preventing them "from communicating with physicians in an effective and informative manner." *Id.* at 564, 131 S.Ct. 2653. Accordingly, the Court concluded that conveying purely factual information is speech protected by the First Amendment and the state had to satisfy "heightened judicial scrutiny." *Id.* at 557, 131 S.Ct. 2653. Finding that Vermont could not satisfy any **\*1073** standard of heightened scrutiny, the Court held the statute unconstitutional.

*Sorrell* controls this case. The PPEA's operative impact is similar to that of the Vermont statute held unconstitutional in *Sorrell*. In both schemes, the speaker is the one being forbidden to act: private, for-profit postsecondary institutions here and pharmaceutical companies in *Sorrell*. *Id.* at 559–61, 131 S.Ct. 2653. And in each case, a violation occurs because of who the listener is and the message the speaker seeks to convey. In *Sorrell*, the listener was the doctor and the forbidden topic was the marketing of prescription drugs. *Id.* at 564–65, 131 S.Ct. 2653. Here, the listener is a student without a high-school education and the topic is vocational education. *See* Cal. Educ. Code §§ 94811; 94857; 94904. Thus, the PPEA's overall statutory scheme precludes certain would-be students from taking a course when the institution would otherwise admit such students "because of the topic discussed." *Reed*, 135 S. Ct. at 2227.[9]

In sum, we agree with the plaintiffs that the PPEA "requires authorities to examine the contents of the message to see if a violation has occurred." *Tschida v. Motl*, 924 F.3d 1297, 1303 (9th Cir. 2019); *see also McCullen*, 573 U.S. at 479, 134 S.Ct. 2518. We thus agree that the statutory scheme here not only implicates speech, but also engages in content discrimination. Moreover, because content discrimination is apparent, the district court should have applied some form of heightened scrutiny. *See Sorrell*, 564 U.S. at 571–72, 131 S.Ct. 2653.[10]

Before us, the parties disputed only whether the First Amendment *applies*, not whether the Act *violates* the First Amendment. Although the Supreme Court has warned that "[i]n the ordinary case it is all but dispositive to conclude that a law is content based," *id.* at 571, 131 S.Ct. 2653, the Court has also recognized that in the commercial-speech context, "content-based restrictions on protected expression are sometimes permissible." *id.* at 579, 103 S.Ct. 1365; *see also Fla. Bar v. Went for It, Inc.*, 515 U.S. 618, 623, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995) ("[W]e engage in "intermediate" scrutiny of restrictions on commercial speech ...."); *Cent. Hudson*, 447 U.S. at 562–63, 100 S.Ct. 2343 ("The **\*1074** Constitution ... accords lesser protection to commercial speech than to other constitutionally guaranteed expression."). The parties did not brief the question of whether the PPEA regulates commercial speech and, if so, what level of heightened scrutiny should apply here. Given the historically different treatment of commercial versus non-commercial speech, and some variations within

Case 2:18-cv-00736-JCC Document 80-1 Filed 03/31/21 Page 7 of 8

Pacific Coast Horseshoeing School, Inc. v. Kirchmeyer, 961 F.3d 1062 (2020)
377 Ed. Law Rep. 849, 20 Cal. Daily Op. Serv. 5490, 2020 Daily Journal D.A.R. 5506

the class of commercial speech, *see Zauderer*, 471 U.S. at 651, 105 S.Ct. 2265, we decline to assume that admonitions from non-commercial-speech cases apply with equal force to cases involving possible commercial speech. *See Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978) ("To require a parity of constitutional protection for commercial and noncommercial speech alike could invite dilution, simply by a leveling process, of the force of the Amendment's guarantee with respect to the latter kind of speech."); *see also Contest Promotions, LLC v. City & Cty. of S.F.*, 874 F.3d 597, 601 (9th Cir. 2017) (rejecting "the notion that *Reed* altered *Central Hudson*'s long-standing intermediate scrutiny framework").

We will leave it to the district court on remand to determine whether this case involves commercial or non-commercial speech, whether California must satisfy strict or intermediate scrutiny, *see Expressions Hair Design v. Schneiderman*, —— U.S. ——, 137 S. Ct. 1144, 1151, 197 L.Ed.2d 442 (2017), and whether it can carry its burden under either standard. *Cf. Nat'l Inst. of Family & Life Advocates*, 138 S. Ct. at 2375 (declining to decide what heightened standard of review applies because the law "cannot survive even intermediate scrutiny"); *Sorrell*, 564 U.S. at 571, 131 S.Ct. 2653 ("[T]he outcome [in this case] is the same whether a special commercial speech inquiry or a stricter form of judicial scrutiny is applied."). We simply hold that, because California's PPEA regulates the content of speech, plaintiffs have stated a First Amendment claim.

### III. CONCLUSION

The district court's judgment dismissing this cause of action for failure to state a First Amendment claim is reversed and the case is remanded for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

**All Citations**

961 F.3d 1062, 377 Ed. Law Rep. 849, 20 Cal. Daily Op. Serv. 5490, 2020 Daily Journal D.A.R. 5506

Footnotes

| | |
|---|---|
| * | The Honorable Michael J. Melloy, United States Circuit Judge for the U.S. Court of Appeals for the Eighth Circuit, sitting by designation. |
| 1 | The PPEA is enforced by the Bureau for Private Postsecondary Education within the California Department of Consumer Affairs. *See* Cal. Educ. Code §§ 94800.5, 94820. |
| 2 | The facts are taken from the complaint. For purposes of this decision we must assume them to be true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). |
| 3 | We review de novo the district court's grant of a motion to dismiss for failure to state a claim. *Burgert v. Lokelani Bernice Pauahi Bishop Tr.*, 200 F.3d 661, 663 (9th Cir. 2000). Constitutional questions implicating the First Amendment are also reviewed de novo. *Cohen v. San Bernardino Valley Coll.*, 92 F.3d 968, 971 (9th Cir. 1996). |
| 4 | Even generally applicable laws can implicate First Amendment concerns, warranting greater scrutiny. *See, e.g.*, *O'Brien*, 391 U.S. at 376–77, 88 S.Ct. 1673 (making clear that "incidental limitations on First Amendment freedoms" at times implicate the First Amendment); *see also Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 289–98, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984) (subjecting a law generally prohibiting sleeping in public parks to First Amendment scrutiny). |
| 5 | It is not entirely clear to us from the statute whether the institution is responsible for refusing enrollment to the student, or whether the student is responsible for determining his own eligibility. *See* Cal. Educ. Code § 94904(a) ("The student shall not enroll unless the student achieves a [qualifying] score."). Under some circumstances the enrollment agreement is "not enforceable," which suggests that the student has a defense to any effort to collect tuition and fees. *Id.* § 94902(b). The question of how the Act is enforced is not essential our disposition here. |
| 6 | The nonprofit religious organization exemption comes with its own content-based restriction: "The instruction is limited to the principles of that religious organization ...." Cal. Educ. Code § 94874(e)(1)(A). |
| 7 | The state's fallback position is that even if the PPEA does not regulate pure conduct, any regulation of speech is incidental because it is not related to expression and the *O'Brien* intermediate scrutiny standard applies. *See Texas v. Johnson*, 491 U.S. 397, 403, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989); *O'Brien*, 391 U.S. at 377, 88 S.Ct. 1673. This standard is identical to the standard we apply to content-neutral time, place, and manner restrictions. *See McCullen*, 573 U.S. at 486, 134 S.Ct. 2518; *Humanitarian Law Project*, 561 U.S. at 27–28, 130 S.Ct. 2705; *Ward*, 491 U.S. at 798, 109 S.Ct. 2746. |

Case 2:18-cv-00736-JCC Document 80-1 Filed 03/31/21 Page 8 of 8

**Pacific Coast Horseshoeing School, Inc. v. Kirchmeyer, 961 F.3d 1062 (2020)**
377 Ed. Law Rep. 849, 20 Cal. Daily Op. Serv. 5490, 2020 Daily Journal D.A.R. 5506

Because we have determined that the Act is content-based, we necessarily conclude that *O'Brien* is not the appropriate standard of review.

8   The information was usually first sold by the pharmacy to a data-mining firm, which in turn sold it to the pharmaceutical manufacturer. 564 U.S. at 558, 131 S.Ct. 2653. But they were all part of the same economic and informational chain.

9   California argues that the ability-to-benefit requirement does not preclude speech because PCHS is free, for example, to post online videos of horseshoeing which Narez could watch. This argument, however, ignores the value the First Amendment places on in-person expression of ideas, *see Kleindienst*, 408 U.S. at 765, 92 S.Ct. 2576 (finding First Amendment injury to listeners who did not have face-to-face access to a speaker), and ultimately goes to whether California can carry its burden under the requisite level of scrutiny, *see McCullen*, 573 U.S. at 477, 134 S.Ct. 2518 (explaining that, even in the intermediate scrutiny context, restrictions on speech must "leave open ample alternative channels for communication of the information" to survive First Amendment scrutiny (quoting *Ward*, 491 U.S. at 791, 109 S.Ct. 2746)), not whether speech is implicated in the first instance, *see Kleindienst*, 408 U.S. at 765, 92 S.Ct. 2576 (noting that the Court was "loath to hold on th[e] record that existence of other alternatives extinguishes altogether any constitutional interest on the part of the appellees in this particular form of access").

10  In reversing the judgment of the district court, we have no reason to question California's motives: "A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech." *Reed*, 135 S. Ct. at 2228 (quoting *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993)); *see also Minneapolis Star*, 460 U.S. at 592, 103 S.Ct. 1365 ("We need not and do not impugn the motives of the ... legislature .... Illicit legislative intent is not the *sine qua non* of a violation of the First Amendment.").

**End of Document**                                                © 2021 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**   © 2021 Thomson Reuters. No claim to original U.S. Government Works.                                                8