Honorable Judge Barbara J. Rothstein

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| CHONG and MARILYN YIM, KELLY LYLES, EILEEN, LLC, and RENTAL HOUSING ASSOCIATION OF WASHINGTON,<br><br>  Plaintiffs,<br>v.<br><br>THE CITY OF SEATTLE, a Washington Municipal corporation,<br><br>  Defendant. | Civil Action No. 2:18-cv-00736-BJR<br><br>**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON SEVERABILITY**<br><br>**Oral Argument Requested** |

**TABLE OF CONTENTS**

I.   INTRODUCTION AND RELIEF REQUESTED ............................................................. 1

II.  STATEMENT OF THE ISSUES ......................................................................................... 2

III. STATEMENT OF UNDISPUTED FACTS ........................................................................ 2

IV.  AUTHORITY ........................................................................................................................ 3

  A.  Standard of Review ........................................................................................................ 3

  B.  The Inquiry Provision Is Not Severable ....................................................................... 3

    1. The Ninth Circuit's Decision Confirms That the Unconstitutional Inquiry Provision Is Essential to the FCHO's Function and Purpose ............................................................. 5

Pl. Motion for Summary Judgment re: Severability - i
2:18-cv-00736-BJR

Pacific Legal Foundation
1425 Broadway, #429
Seattle, Washington 98122
(425) 576-0484

    2. Seattle Confirmed That the Inquiry Provision Is So Essential to the FCHO That the City Council Would Not Have Adopted the Ordinance Without the Speech Ban .................. 7

    3. Seattle's Continuing Enforcement of the Unconstitutional Speech Ban Shows That the Inquiry Provision Is Not Severable............................................................................. 10

  C. Severance Will Require Striking Two Provisions of the FCHO ....................................... 13

V. CONCLUSION................................................................................................................... 14

CERTIFICATE OF SERVICE ..................................................................................................... 15

*Pl. Motion for Summary Judgment re: Severability* - ii  
2:18-cv-00736-BJR

*Pacific Legal Foundation*  
*1425 Broadway, #429*  
*Seattle, Washington 98122*  
*(425) 576-0484*

Pursuant to Federal Rule of Civil Procedure 56, Plaintiffs hereby move for summary judgment on the issue of severability.

## I. INTRODUCTION AND RELIEF REQUESTED

This challenge to Seattle's "Fair Chance Housing Ordinance" (FCHO), Ch. 14.10 Seattle Municipal Code (SMC), returns to the Court on remand from the Ninth Circuit. At issue is whether the Ordinance's unconstitutional "inquiry provision," which "prohibit[ed] landlords from requiring disclosure or inquiring about 'any arrest record, conviction record, or criminal history' of current or prospective tenants," can be severed from the Ordinance. *Yim v. City of Seattle*, 63 F.4th 783, 789, 799 (9th Cir. 2023) (quoting SMC § 14.09.025(A)(2)). The answer to this question necessarily follows from the Ninth Circuit's determination that the provision is so central to the Ordinance that it cannot operate effectively without that provision's speech ban. *Id*. at 792 & n.16. That conclusion—which is binding on this Court—resolves whether the inquiry provision can be severed from the Ordinance without undoing the legislature's intent: it cannot.

Although Seattle's inclusion of a boilerplate severability clause, SMC § 14.09.120, creates a presumption of severability, the Ordinance's language and legislative history make clear that the inquiry provision was so central to the City's objectives that the City Council would not have adopted the law without it. *See Leonard v. City of Spokane*, 127 Wn.2d 194, 201, 897 P.2d 358 (1995) (Provisions of a statute are not severable if the constitutional and unconstitutional provisions are so connected that the legislature would not have passed one without the other, or that the remainder of the statute is useless to accomplish the legislative purpose.). Indeed, Seattle conceded this point in its initial motion for summary judgment, stating that the City Council "considered" adopting a less-restrictive inquiry provision but "rejected this approach as ineffective." Seattle X-Mtn. for Summary Judgment, Dkt. # 33 at 20. And in its briefs to this Court and the Ninth Circuit, Seattle insisted that the provision was so essential to the law that anything less than an outright ban on criminal history inquiries would frustrate its legislative objectives. *See infra* at 7–10. For these reasons, Plaintiffs Chong and MariLyn Yim, Kelly Lyles, and Eileen, LLC, and Rental Housing Association of Washington (collectively, the Yims) respectfully move this

Pl. Motion for Summary Judgment re: Severability - 1
2:18-cv-00736-BJR

*Pacific Legal Foundation*
*1425 Broadway, # 429*
*Seattle, Washington 98122*
*(425) 576-0484*

Court to grant this motion for summary judgment, rule that the inquiry provision cannot be severed from the Ordinance, and to enjoin any further enforcement of the entire Ordinance.

## I.      STATEMENT OF THE ISSUES

1. Whether Seattle's City Council would have adopted the FCHO without the inquiry provision; and

2. Whether severance of the inquiry provision would undermine the City's legislative objectives.

## II.     STATEMENT OF UNDISPUTED FACTS

This case was previously litigated on cross-motions for summary judgment and was based on a stipulated record. *See* Minute Order, Dkt. # 10. In the interest of judicial economy, Plaintiffs incorporate the statement of facts set out in their motion for summary judgment, Dkt. # 23, and provide the following summary of the proceedings.

This case involves a constitutional challenge to the "unfair practices" section of Seattle's FCHO, which:

(1) "prohibit[ed] landlords from requiring disclosure or inquiring about 'any arrest record, conviction record, or criminal history' of current or prospective tenants" (the "inquiry provision"), and

(2) "prohibited landlords … from taking adverse action against them based on that information" (the "adverse action provision").

*Yim*, 63 F.4th at 789 (quoting SMC § 14.09.025(A)(2)). The Ordinance defined "adverse action" to include denial of tenancy, evicting an occupant, or terminating a lease. SMC § 14.09.010.

In 2018, the Yims filed a complaint in King County Superior Court, alleging that the inquiry provision violated the First Amendment's Free Speech Clause and that the adverse action provision violated the Fourteenth Amendment's Due Process Clause. *Yim*, 63 F.4th at 790. The City removed proceedings to the Federal District Court, where the parties filed cross-motions for summary judgment based on a stipulated record. *Id*. In July 2021, the District Court denied

*Pl. Motion for Summary Judgment re: Severability* - 2
2:18-cv-00736-BJR

*Pacific Legal Foundation*
*1425 Broadway, # 429*
*Seattle, Washington 98122*
*(425) 576-0484*

Plaintiffs' motion for summary judgment and granted the City's cross-motion, dismissing the Yims' Free Speech and Due Process claims. *Id*. at 791.

On review, the Ninth Circuit reversed in part and affirmed in part, holding that the inquiry provision violated the First Amendment's commercial speech doctrine, *id*. at 798, while affirming this Court's conclusion that the adverse action provision did not violate due process. *Id*. at 798–99. The Ninth Circuit remanded the matter to this Court to determine whether the inquiry provision could be severed under Washington's severability doctrine. *Id*. at 799. The Court of Appeals concluded that the parties should have "an opportunity to brief and argue before the district court whether there is evidence in the record that overcomes the presumption of severability." *Id.*

Seattle, thereafter, petitioned the Ninth Circuit to rehear the First Amendment issue en banc and the Yims filed a conditional cross-petition asking the court to rehear the Due Process claim should the City's petition be granted. The Ninth Circuit denied both requests and the Yims filed a petition for a writ of certiorari with the Supreme Court of the United States addressing the due process issue, which was denied on January 22, 2024. *Yim v. Seattle*, No. 23-329, 2024 WL 218780, at *1 (U.S. Jan. 22, 2024).

The matter is now back before this Court.

### III.   AUTHORITY

#### A. Standard of Review

Summary judgment is warranted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Because this motion relies on the findings of fact and conclusions of law previously entered by this Court and the Ninth Circuit to determine a pure question of Washington state law, summary judgment is appropriate. *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2208 (2020) ("severability presents a pure question of law").

#### B. The Inquiry Provision Is Not Severable

When confronted with an unconstitutional statute, a court must balance two competing concerns. On the one hand, the court should restrain itself from "rewriting state law to conform it

Pl. Motion for Summary Judgment re: Severability - 3
2:18-cv-00736-BJR

Pacific Legal Foundation
1425 Broadway, # 429
Seattle, Washington 98122
(425) 576-0484

to constitutional requirements" and must avoid "quintessentially legislative work[.]" *Ayotte v. Planned Parenthood of Northern New England*, 546 U.S. 320, 329 (2006). On the other hand, the court should "try not to nullify more of a legislature's work than is necessary," severing unconstitutional provisions if possible. *Id.* Whether the court would be involved in impermissible legislative rewriting, or whether instead a law can be salvaged through severance, depends on how embedded the unconstitutional provisions are in the statutory fabric.

Under Washington law, an ordinance is unenforceable in its entirety if either (1) "the constitutional and unconstitutional provisions are so connected ... that it could not be believed that the legislature would have passed one without the other," or (2) "the part eliminated is so intimately connected with the balance of the act as to make it useless to accomplish the purposes of the legislature." *State v. Abrams*, 163 Wn.2d 277, 285–86, 178 P.3d 1021 (2008) (citations omitted); *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2353 (2020) (severability is a matter of state law).

These alternative tests provide independent grounds for invalidating the law in its entirety—even where the law contains a severability clause. *State v. Anderson*, 81 Wn.2d 234, 236, 501 P.2d 184 (1972); *McGowan v. State*, 148 Wn.2d 278, 294–95, 60 P.3d 67 (2002) (The government's inclusion of a severability clause is "not necessarily" dispositive of the issue.). In fact, "the ultimate determination of severability will rarely turn on the presence or absence of such a clause." *United States v. Jackson*, 390 U.S. 570, 585 n.27 (1968); *see also, e.g.*, *Buckley v. Valeo*, 424 U.S. 1, 255 (1976) ("To invoke a severability clause to salvage parts of a comprehensive, integrated statutory scheme, which parts, standing alone, are unworkable and in many aspects unfair, exalts a formula at the expense of the broad objectives of Congress."); *Spokane Arcades, Inc. v. Brockett*, 631 F.2d 135, 139 (9th Cir. 1980), *aff'd*, 454 U.S. 1022 (1981) (no severability of unconstitutional provision of state law despite a severability clause).

Pl. Motion for Summary Judgment re: Severability - 4
2:18-cv-00736-BJR

Pacific Legal Foundation
1425 Broadway, # 429
Seattle, Washington 98122
(425) 576-0484

**1. The Ninth Circuit's Decision Confirms That the Unconstitutional Inquiry Provision Is Essential to the FCHO's Function and Purpose**

The questions presented by Washington's severability test were fully litigated and finally decided by the Ninth Circuit's determination that Seattle's inquiry provision, which prohibited housing providers from "requiring disclosure or inquiring about 'any arrest record, conviction record, or criminal history' of current or prospective tenants," was central to the FCHO. *Yim*, 63 F.4th at 789, 792. Specifically, the court concluded that "[t]he very purpose of the Ordinance was to reduce barriers to housing and housing discrimination by barring landlords from considering an applicant's criminal history." *Id.* at 792. This conclusion followed from the district court's assessment that "the central purpose of the Ordinance is to prevent landlords from *learning and using* true information about prospective occupants' criminal histories," inextricably linking the inquiry and adverse action provisions as working together to achieve the City's legislative objectives. *Yim v. City of Seattle*, No. C18-0736-JCC, 2021 WL 2805377, at *8 (W.D. Wash. July 6, 2021) (emphasis added).

This conclusion drew the support of the full Ninth Circuit panel. Judge Wardlaw wrote that "the very core of the Ordinance here [is] a prohibition on requiring disclosure or making inquiries about criminal history generally on rental applications[.]" *Yim*, 63 F.4th at 800 (Wardlaw, J., concurring). And, even when dissenting from the Court's First Amendment analysis, Judge Gould agreed that "[r]estricting access to records of recent or violent offenses is at the core of, and no less necessary to accomplishing, Seattle's aims than restricting access to older and less violent criminal records." *Id.* at 811 (Gould, J., concurring in part, dissenting in part).

The Ninth Circuit furthermore concluded that the FCHO would be rendered ineffective without any restriction on criminal history inquiries and applicant disclosures. *Yim*, 63 F.4th at 795 n.16. The Court of Appeals reached that conclusion after evaluating seven similar criminal history laws that employed less-speech-restrictive means to accomplish similar government objectives.[1]

---

[1] The Court considered those alternatives under the fourth prong of the U.S. Supreme Court's test for evaluating a burden on commercial speech, which asks whether the challenged restriction "is

Pl. Motion for Summary Judgment re: Severability - 5
2:18-cv-00736-BJR

Pacific Legal Foundation
1425 Broadway, # 429
Seattle, Washington 98122
(425) 576-0484

*Id*. at 795–98. As part of this evaluation, the court also considered and rejected the Yims' argument that Seattle could have simply adopted the adverse action provision with no restriction on speech whatsoever (the very formulation of the FCHO that severance of the inquiry provision would establish). *Id*. at 795 n.16. The court rejected the Yims' argument, holding that the City would be unable to achieve its objective of preventing disparate racial impacts without any restriction on a landlord's ability to inquire into an applicant's criminal history:

> The landlords ... argue that the City could have omitted the inquiry provision entirely, and simply passed the adverse action provision. However, if landlords are allowed to access criminal history, just not act on it, it makes the Ordinance extremely difficult to enforce, and makes it more likely that unconscious bias will impact the leasing process. *See* Helen Norton, *Discrimination, the Speech That Enables It, and the First Amendment*, 2020 U. Chi. L. For. 209, 218 (2020) ("Legislatures' interest in stopping discrimination before the fact is especially strong because after-the-fact enforcement is frequently slow, costly, and ineffective.").

*Yim*, 63 F.4th at 795 n.16; *see also id*. at 812 ("For all the reasons set forth in the opinion's footnote 16, … the landlords' [less restrictive] alternatives do not proportionately and adequately address Seattle's aims.") (Gould, J., concurring in part, dissenting in part). Indeed, Seattle emphasized this footnote in its Petition for Rehearing En Banc, stating that the "majority conceded that an adverse-action provision without an inquiry provision would not be effective at all." Seattle Petition for Rehearing En Banc, 9th Cir. No. 21-35567, Dkt. # 61 at 19 (Apr. 18, 2023); *see also Yim*, 63 F.4th at 810 (opining that anything less than an outright ban on criminal history inquiries would

---

not more extensive than is necessary to serve [the government's] interest." *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557, 566 (1980). In making that determination, the existence of "less-burdensome alternatives to the restriction on commercial speech ... is certainly a relevant consideration in determining whether the 'fit' between ends and means is reasonable." *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 417 n.13 (1993); *Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 826 (9th Cir. 2013) ("[B]ecause restricting speech should be the government's tool of last resort, the availability of obvious less-restrictive alternatives renders a speech restriction overinclusive.").

Pl. Motion for Summary Judgment re: Severability - 6
2:18-cv-00736-BJR

Pacific Legal Foundation
1425 Broadway, # 429
Seattle, Washington 98122
(425) 576-0484

undermine the City's objectives by "open[ing] the door for more undetectable (and unenforceable)" disparate racial outcomes) (Gould, J., concurring in part, dissenting in part).

The Ninth Circuit's conclusions are the law of the case.[2] *United States v. Lewis*, 611 F.3d 1172, 1179 (9th Cir. 2010) (the decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case). As such, the Court's conclusions are determinative of the question whether "the part eliminated is so intimately connected with the balance of the act as to make it useless to accomplish the purposes of the legislature." *Abrams*, 163 Wn.2d at 285–86. It is. The Ninth Circuit determined that the inquiry provision was central to the FCHO's function and purpose—so much so that, without the inquiry ban, the City would be unable to prevent the disparate racial outcomes that the law was adopted to stop. *Yim*, 63 F.4th at 792, 795 n.16. The inquiry provision therefore cannot be severed. *City of New Haven v. United States*, 809 F.2d 900, 907 (D.C. Cir. 1987) (denying severability where the unlawful provision was "the 'raison d'etre' of the entire legislative effort").

> **2. Seattle Confirmed That the Inquiry Provision Is So Essential to the FCHO That the City Council Would Not Have Adopted the Ordinance Without the Speech Ban**

Even if the Ninth Circuit's conclusions were not sufficiently determinative, Seattle's briefing in this case confirms that the inquiry provision's speech ban was so essential to the function and purpose of the FCHO that the City Council would not have adopted the ordinance without it. Indeed, in a key concession, Seattle stated that the City Council had "considered" adopting a less-burdensome inquiry provision but "rejected [that] approach as ineffective."[3]

---

[2] None of the exceptions to the doctrine apply here. *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) ("A Court may have discretion to depart from the law of the case where: (1) the first decision was clearly erroneous; (2) an intervening change in the law has occurred; (3) the evidence on remand is substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result.").

[3] An early, unadopted version of Seattle's FCHO contained a less-restrictive inquiry provision that "permitted landlords to inquire about *some* criminal convictions, while still banning them from asking about: 'arrests not leading to convictions; pending criminal charges; convictions that have

Pl. Motion for Summary Judgment re: Severability - 7
2:18-cv-00736-BJR

*Pacific Legal Foundation*
*1425 Broadway, # 429*
*Seattle, Washington 98122*
*(425) 576-0484*

Seattle X-Mtn. for Summary Judgment, Dkt. # 33 at 24; *see also* Seattle Petition for Rehearing En Banc, 9th Cir. No. 21-35567, Dkt. # 61 at 19 (insisting that "an adverse-action provision without an inquiry provision would not be effective at all"). That concession also establishes that the inquiry provision is not severable. *Abrams*, 163 Wn.2d at 285–86; *see also Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782–83 (9th Cir. 2001) (judicial estoppel prevents a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position); *Heimbecher v. City and Cnty. of Denver*, 97 Colo. 465, 473 (1935) ("Litigants are not allowed to blow both hot and cold at the same time."). But there is more.

Seattle's desire to craft an ordinance that elevated the interests of people with criminal pasts over the interests of landlords and their existing tenants resulted in a law with a structure and function that was inextricably bound to the inquiry provision's unconstitutional speech ban— particularly its applicant-disclosure ban. As the City explained in its summary judgment brief, its decision to ban criminal history inquiries was based on studies suggesting that the mere act of asking such a question could result in disparate racial impacts. Seattle X-Mtn. for Summary Judgment, Dkt. # 33 at 24. "Without a business reason, any criminal conviction screening can be a tool for racial discrimination because it disproportionately affects people of color." *Id.* (citing Stipulated Record (SR) 226; Rebecca Oyama, *Do not (Re)enter: The Rise of Criminal Background Tenant Screening As a Violation of the Fair Housing Act*, 15 Mich. J. Race & L. 181, 220 (2009)). Indeed, according to the City's legislative history presented in the record, simply asking an applicant to disclose any convictions could deter an individual with a criminal past from applying for an apartment, regardless of whether the landlord uses that information in making a tenancy decision. SR 113, Dkt. # 33-6 at 15; *see also* Municipal Lawyers Ass'n et al. Br. Amicus Curiae, *Yim v. City of Seattle*, No. 21-35567, 2022 WL 432242, at *5 (9th Cir. Feb. 4, 2022) (reporting that "[i]ndividuals with arrest or conviction records were discouraged from applying for housing

---

been expunged, sealed, or vacated; juvenile records, including listing of a juvenile on a sex offense registry; and convictions older than two years from the date of the tenant's application.'" *Yim*, 63 F.4th at 797. Seattle rejected that less-burdensome approach.

*Pl. Motion for Summary Judgment re: Severability* - 8
2:18-cv-00736-BJR

Pacific Legal Foundation
1425 Broadway, # 429
Seattle, Washington 98122
(425) 576-0484

or from obtaining housing because a 'box' on the application required disclosure of criminal history information that likely would automatically exclude them from consideration").

Even though the City's studies concluded that the risk of discrimination could be *reduced* by requiring that landlords provide a legitimate business reason for denying an application,[4] Seattle was determined to prevent *any* possibility that criminal history inquiries may result in disparate outcomes. Seattle X-Mtn. for Summary Judgment, Dkt. # 33 at 20 (the City's objective is to "stop[] discrimination" against people of color who are "disproportionately represented in the criminal justice system"). This legislative objective included the "more ambitious goal" of protecting even those individuals with "more recent, serious offenses" from having to disclose past crimes. Seattle Petition for Rehearing En Banc, Dkt. # 61 at 18; *see also Yim v. City of Seattle*, No. C18-0736-JCC, 2021 WL 2805377, at *13 (W.D. Wash. July 6, 2021) (Seattle made the "policy decision to prohibit landlords from considering *any* crimes, no matter how violent or how recent."). Thus, the City chose to "prohibit[] landlords from requiring prospective tenants to hand over their criminal history to landlords in the first place." Seattle X-Mtn. for Summary Judgment, Dkt. # 33 at 15. Seattle's decision to advance its objectives by banning all criminal history inquiries, however, created an *all-or-nothing* situation for individuals with criminal pasts. While the unconstitutional inquiry provision was in place, prospective tenants were guaranteed that they would not be denied tenancy based on their criminal pasts because housing providers were banned from asking such questions. But without the provision, Seattle believes the FCHO cannot effectively protect them against the inquiry-based impacts the Ordinance was designed to prevent—impacts that the "adverse action" provision, operating alone, cannot police. *See Yim*, 63 F.4th at 795 n.16, 810, 812.

---

[4] Seattle acknowledged that a legitimate business reason could mitigate the potential that a criminal history may be used as a tool for discrimination, but chose to allow a "business reason" exception only for information contained in an adult sex offender registry. SMC § 14.09.025(A)(3). In this way, the FCHO differed from the less burdensome criminal history restrictions enacted by other cities. *See, e.g.*, Portland, Or., City Code § 30.01.086; Minneapolis, Minn., City Code § 244.2030.

*Pl. Motion for Summary Judgment re: Severability* - 9  
2:18-cv-00736-BJR

Pacific Legal Foundation  
1425 Broadway, # 429  
Seattle, Washington 98122  
(425) 576-0484

Seattle emphasized this point in its Petition for Rehearing En Banc, where it explained that anything less than a near-total ban on criminal history inquiries would undermine its objectives by "allowing landlords to ask about—and discriminate based on—more criminal history information." Seattle Petition for Rehearing En Banc, Dkt. # 61 at 8, 17–18. Accordingly, Seattle insisted that Judge Gould's concurring opinion "correctly understood that … [r]estricting access to records of recent or violent offenses is at the core of … Seattle's aims.... [T]here is no basis from which we could reasonably conclude that [less restrictive] alternatives would achieve Seattle's aims." *Id*. at 18 (quoting *Yim*, 63 F.4th at 811–12 (Gould, J., concurring in part, dissenting in part)).

Seattle's pleadings, therefore, confirm that severing the inquiry provision would undermine the function and purpose of the FCHO by removing all barriers to an applicant's disclosure requirement by otherwise allowing housing providers to obtain unlimited access to an applicant's arrest and conviction records. Seattle X-Mtn. for Summary Judgment, Dkt. # 33 at 24 (the inquiry provision is so essential to the law that removing it would render the FCHO "ineffective" at achieving the City's objectives); *see also* Seattle Answering Br., *Yim v. City of Seattle*, No. 21-35567, 2022 WL 333224, at *40 (9th Cir. Jan 28, 2022) ("None of these [less restrictive] alternatives addresses Seattle's substantial interests."). Indeed, more than just rendering the FCHO ineffective, severance would authorize precisely what Seattle sought to prohibit. *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 685 (1987) (when evaluating severability, the "relevant inquiry … is whether the statute will function in a *manner* consistent with the intent of Congress"). For these reasons, the inquiry provision cannot be severed. *Abrams*, 163 Wn.2d at 285–86.

### 3. Seattle's Continuing Enforcement of the Unconstitutional Speech Ban Shows That the Inquiry Provision Is Not Severable

Seattle's continued enforcement of the inquiry provision's applicant-disclosure prong—despite the Ninth Circuit's ruling—provides additional evidence that the City still views its speech ban as essential to its objectives. *See, e.g.*, *Lill v. Dir., Div. of Alcoholic Beverage Control, Dep't of L. & Pub. Safety*, 142 N.J. Super. 242, 250, 361 A.2d 87, 91 (App. Div. 1976) (an enforcement

Pl. Motion for Summary Judgment re: Severability - 10  
2:18-cv-00736-BJR

Pacific Legal Foundation  
1425 Broadway, # 429  
Seattle, Washington 98122  
(425) 576-0484

agency's continuous construction of a regulation, without interference by legislative amendment, is given substantial weight as corroborative evidence of legislative intent).

This Court may take judicial notice that shortly after the Ninth Circuit issued its opinion declaring the inquiry provision unconstitutional, Seattle's Office for Civil Rights posted an "update" to the "Criminal History Protection" section of its "Housing Rights" website, stating that it would "continue to enforce" the FCHO's ban "on requiring a tenant or applicant to disclose their criminal history."[5]

> As of June 6, 2023, due to a recent ruling from the U.S. Court of Appeals for the Ninth Circuit, the Seattle Office for Civil Rights (SOCR) will no longer enforce the portion of the Fair Chance Housing Ordinance (FCHO) that bans a landlord from inquiring about a tenant's or applicant's criminal history. **SOCR will continue to enforce all other portions of the FCHO, including bans (subject to exceptions) on requiring a tenant or applicant to disclose their criminal history** or taking an adverse action based on that history.

Criminal History Protections, "June 2023 Update: Fair Chance Housing Ordinance" (Seattle Office for Civil Rights) (emphasis added).[6] And in February 2024, Seattle published an "Overview of Rental Programs," stating once again that "Landlords may not require a housing applicant to disclose their criminal history[.]" Seattle Department of Construction & Inspections, Housing & Human Services Committee, "Overview of Rental Programs," at 11 ("Housing Discrimination").[7]

---

[5] The Yims request that this Court take judicial notice of Seattle's "June 2023 Update: Fair Chance Housing Ordinance" under Federal Rule of Evidence 201, which permits courts to take notice of facts that are "not subject to reasonable dispute." *United States ex rel. Parikh v. Premera Blue Cross*, No. C01-0476P, 2006 WL 2841998, at *3–*4 (W.D. Wash. Sept. 29, 2006) (reports found on government websites are self-authenticating under Fed. R. Evid. 902(5)).

[6] Available at https://www.seattle.gov/civilrights/housing-rights/criminal-history-protections (last visited Feb. 20, 2024). Relevant pages are attached to the Declaration of Brian T. Hodges as Exhibit A.

[7] The Yims request that this Court take judicial notice of Seattle's "Overview of Rental Programs" webpage under Fed. R. Evid. 201. The page is available at https://seattle.legistar.com/View.ashx?M=F&ID=12706297&GUID=C2430450-AA28-4194-9495-1504E928D6D7 (last visited Mar. 4, 2024). Relevant pages are attached to the Declaration of Brian T. Hodges as Exhibit B.

Pl. Motion for Summary Judgment re: Severability - 11
2:18-cv-00736-BJR

Pacific Legal Foundation
1425 Broadway, # 429
Seattle, Washington 98122
(425) 576-0484

Seattle's rationale for defying the Ninth Circuit appears to be based on post-hoc wordplay and finds no support in the law of the case. Recall that the inquiry provision states, "It is an unfair practice for any person to … [r]equire disclosure [or] inquire about [a prospective tenant's] arrest record, conviction record, or criminal history." SMC § 14.09.025(A)(2); *see also Yim*, 63 F.4th at 789 (defining the inquiry provision as the prohibition on landlords "requiring disclosure or inquiring about any arrest record, conviction record, or criminal history of current or prospective tenants") (cleaned up). On June 6, 2023, however, Seattle's Office for Civil Rights updated its "Frequently Asked Questions" webpage to suggest that the Ninth Circuit's ruling had invalidated only the phrase "inquire about," and did not affect the provision's "require disclosure" language:[8]

> What does "require disclosure" and "inquire about" mean?
> Although a landlord may inquire about criminal history, they may not (subject to the gathering of registry information and other exclusions in SMC 14.09) require someone to disclose criminal history and/or take an adverse action such as refusing to rent to the applicant because the applicant refused to disclose this information on the application.

Fair Chance Housing Ordinance, SMC § 14.09, Frequently Asked Questions Seattle Office for Civil Rights, at 7 (Edited June 6, 2023).

Seattle knows, however, that the Ninth Circuit declared the entire inquiry provision unconstitutional, without limitation to any one type of inquiry or the person being asked.[9] *Yim*, 63 F.4th at 798; *see also id.* at 802 ("requiring disclosure of information … is protected speech," just like a request for information) (Wardlaw, J., concurring) (citing *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 570 (2011)). Indeed, Seattle's motion for summary judgment acknowledged that

---

[8] The Yims request that this Court take judicial notice of Seattle's "Frequently Asked Questions" webpage under Fed. R. Evid. 201. The page is available at https://www.seattle.gov/documents/Departments/CivilRights/Enforcement/Fair%20Housing%20Posters/FairChanceHousing/Fair-Chance-Housing-FAQ-June-6-2023.pdf (last visited Mar. 22, 2024). Relevant pages are attached to the Declaration of Brian T. Hodges as Exhibit C.

[9] The Ordinance is published at https://library.municode.com/wa/seattle/codes/municipal_code?nodeId=TIT14HURI_CH14.09USSCREHO_14.09.005SHTI (last visited Mar. 22, 2024).

*Pl. Motion for Summary Judgment re: Severability* - 12
2:18-cv-00736-BJR

Pacific Legal Foundation
1425 Broadway, # 429
Seattle, Washington 98122
(425) 576-0484

"Plaintiffs' First Amendment challenge is limited to Subsection 2's prohibition on a landlord requiring disclosure of, or inquiring about, a prospective tenant's criminal history." Seattle X-Mtn. for Summary Judgment, Dkt. # 33 at 13) (citing Compl. for Decl. & Inj. Relief, Dkt. # 1-1 at 14–18). There is no basis in this case to exempt the applicant-disclosure ban from the Ninth Circuit's ruling. Seattle never asked the District Court or Ninth Circuit to limit its First Amendment ruling to the provision's "inquire about" prong, nor did it ask the Ninth Circuit to clarify its ruling in this regard. Thus, the City's post-decision wordplay, and its associated threats to continue enforcing the applicant-disclosure ban, can only be viewed as *ipse dixit* designed to effectuate its frustrated objectives. For this reason, too, the inquiry provision cannot be severed.

### C. Severance Will Require Striking Two Provisions of the FCHO

Should this Court determine that the inquiry provision is severable, it will take more than simply excising the offending language (strike-through) from SMC § 14.09.025(A)(2) ("It is an unfair practice for any person to … **Require disclosure, inquire about, or** take an adverse action against a prospective occupant, a tenant, or a member of their household, based on any arrest record, conviction record, or criminal history[.]") to cure the free speech violation. The Ordinance's "Notice" provision also contains language (strike-through) incorporating the unconstitutional speech ban:

> Notice of the requirements of this Chapter 14.09 shall be written on all applications for rental properties. The written notice shall state that the landlord is prohibited from ~~requiring disclosure, asking about,~~ rejecting an applicant, or taking an adverse action based on any arrest record, conviction record, or criminal history, except for registry information as described in subsections ….

SMC § 14.09.020 ("Notice to prospective occupants and tenants"). That language, too, must be stricken.

Pl. Motion for Summary Judgment re: Severability - 13
2:18-cv-00736-BJR

*Pacific Legal Foundation*
*1425 Broadway, # 429*
*Seattle, Washington 98122*
*(425) 576-0484*

## IV. CONCLUSION

For the foregoing reasons, the Yims respectfully request the Court to rule that the inquiry provision cannot be severed from the FCHO, and to enjoin any further enforcement of the entire Ordinance.

DATED: April 19, 2024.

        Respectfully submitted,

        PACIFIC LEGAL FOUNDATION

        By: s/ BRIAN T. HODGES
        Brian T. Hodges, WSBA # 31976
        1425 Broadway, #429
        Seattle, Washington 98122
        Telephone: (425) 576-0484
        BHodges@pacificlegal.org

        By: s/ ETHAN W. BLEVINS
        Ethan W. Blevins, WSBA # 48219
        555 Capitol Mall, Suite 1290
        Sacramento, California 95814
        Telephone: (916) 419-7111
        EBlevins@pacificlegal.org

        *Attorneys for Plaintiffs*

*Pl. Motion for Summary Judgment re: Severability* - 14
2:18-cv-00736-BJR

*Pacific Legal Foundation
1425 Broadway, # 429
Seattle, Washington 98122
(425) 576-0484*

## CERTIFICATE OF SERVICE

I hereby certify that on April 19, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to all counsel of record.

           s/ BRIAN T. HODGES
           Brian T. Hodges, WSBA # 31976

           *Attorney for Plaintiffs*

Pl. Motion for Summary Judgment re: Severability - 15
2:18-cv-00736-BJR

Pacific Legal Foundation
1425 Broadway, # 429
Seattle, Washington 98122
(425) 576-0484